327 So.2d 405 (1976)
STATE of Louisiana
v.
Claude WOODS.
No. 57011.
Supreme Court of Louisiana.
February 23, 1976.
*406 Fred C. Jackson, St. Francisville, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Leon A. Picou, Jr., Dist. Atty., Cynthia P. Branton, Asst. Dist. Atty., St. Francisville, for plaintiff-appellee.
MARCUS, Justice.
Claude Woods was indicted by the grand jury for the Parish of West Feliciana for the first degree murder of James Hodges in violation of La.R.S. 14:30(3). After trial by jury, defendant was found guilty as charged. A motion for a new trial was denied. Defendant was then sentenced to death in accordance with the mandatory death penalty provided in La.R.S. 14:30. Thereafter, he took an appeal and designated two errors in his assignment of errors filed in the district court.

ASSIGNMENT OF ERROR NO. 1
Defendant first contends that the trial judge erred in denying his motion for a new trial grounded on the allegation that the verdict was "contrary to the law and evidence." It is well established that the allegation that the verdict is contrary to the law and evidence presents nothing for our review. State v. Lisenby, 306 So.2d 692 (La.1975); State v. Vince, 305 So.2d 916 (La.1974); State v. Gilbert, 286 So.2d 345 (La.1973); State v. Howard, 283 So.2d 199 (La.1973). Only where the allegation is that there is no evidence of the crime charged or an essential element thereof is an error of law presented for our review. La.Code Crim.P. art. 858. However, since this case involves the death penalty, we have decided to treat it as if defendant had made such an allegation.
Defendant was charged with first degree murder in violation of La.R.S. 14:30(3) which provides in pertinent part:
First degree murder is the killing of a human being:
(3) Where the offender has a specific intent to kill or to inflict great bodily harm and has previously been convicted of an unrelated murder or is serving a life sentence; or
We will proceed to briefly review the evidence presented at trial for the purpose of determining whether there is some evidence of each element of the crime charged.
The alleged murder took place on July 18, 1974 on tier "B" in the maximum security area of the state penitentiary at Angola. In this area, prisoners are assigned individual cells. There are fifteen cells on each tier. The doors of said cells are controlled from a panel located outside the bars which separate the tier from the rest of the prison. An outer door permits entry into the tier through the bars. The cells are in a straight line and numbered numerically from the outer door. The alleged murder occurred during the feeding of the noon meal. Meals are served to these prisoners in their cells. Each day, "two inmates to feed" are chosen by the prisoners on the tier. One of these prisoners pushes a three-leveled cart containing food trays down a corridor adjacent to the cells. He is followed by the other prisoner who serves milk and Kool-Aid. Two guards station themselves outside the outer door and from that position open and close the cell doors one at a time as the food cart is *407 pushed past each cell. When a cell door is opened, the prisoner comes out, secures a tray from the cart, goes back into the cell and then the door is locked behind him.
On the day in question, Claude Woods and Harry Johnson were designated from tier "B" as the "inmates to feed." Woods proceeded first, pushing the cart, while Johnson followed serving the drinks. On reaching cell 12, located about fifty feet from the outer door, Sgt. Ted J. Mitchell, one of the guards, opened the cell door, and James Hodges, the prisoner occupying that cell, took one step out and reached down to get his tray. At that time, Woods pulled a knife from his clothing and stabbed Hodges in the back. Sgt. Mitchell testified that he saw Woods stab Hodges about ten times. The victim tried to escape but was unable to do so. Sgt. Mitchell shouted for them to stop, while the other guard on duty, Sgt. Leon Blades, after seeing Woods stab Hodges three times, sought assistance. Immediately after the stabbing, Sgt. Mitchell observed Woods place the murder weapon through the bars of his cell into a box located therein. Doors of the cells assigned to Woods and Johnson were opened, and the two prisoners were ordered inside. They complied and the doors were locked behind them. The victim was found lying on the floor of the corridor between cells 8 and 9. He was flat on his back and gasping for breath. The victim was checked for weapons and thereafter removed on a stretcher to the hospital. No weapons were found on his person. Sgt. Mitchell recovered the knife from the box inside defendant's cell. Woods was stripped and searched for possible possession of other weapons. He was also examined for bruises or lacerations but none were found. The cells of both Hodges and Woods were thoroughly searched, as well as the area where the assault had taken place, but no other weapon was discovered.
At trial, the knife was identified by the guards as the one recovered from defendant's cell. Testimony of other guards, who appeared on the scene after the stabbing, corroborated the testimony of Sgts. Mitchell and Blades as to the investigation that took place after the incident. The coroner also testified that he performed an autopsy on Hodges on July 18, 1974 and found twelve stab wounds on decedent's body, two of which were fatal. The nature of these wounds are compatible with that which could be inflicted by the use of the murder weapon. Death was caused from a combination of bleeding into the chest cavity and the heart sac. This was a result of the fatal wounds found on the surface of decedent's body. The coroner also testified that death occurred ubout five minutes after infliction of the wounds.
In connection with the testimony of the clerk of court of West Baton Rouge Parish, certified copies of records involving defendant's previous murder conviction and sentence of life imprisonment were introduced into evidence. Defendant was also personally identified as the same person involved in the prior proceeding. Likewise, his fingerprints were found to be the same as the ones secured from him in connection with the earlier proceeding. The defense rested without offering any evidence.
After reviewing the record, we are convinced that there is ample evidence to support each element of the crime charged. Hence, there is no merit in this assignment of error.

ASSIGNMENT OF ERROR NO. 2
This assignment of error was neither briefed nor argued in this court. Ordinarily, we would consider it abandoned; however, again, for the reason that this case involves the death penalty, we have decided to review the alleged error as if it had been urged on appeal.
Defendant objected to the introduction in evidence by the state of evidence of defendant's prior murder conviction as *408 being in violation of La.R.S. 15:495. Defendant urged that, under this statute, evidence of a former conviction is admissible only for the purpose of impeaching the credibility of a witness and, since defendant did not take the stand, it was reversible error for the state to have offered such evidence.
As previously indicated, defendant was charged with first degree murder in violation of La.R.S. 14:30(3), which provides in pertinent part:
First degree murder is the killing of a human being:
(3) Where the offender has a specific intent to kill or to inflict great bodily harm and has previously been convicted of an unrelated murder or is serving a life sentence; or
Clearly, proof that the accused has "previously been convicted of an unrelated murder or is serving a life sentence" is an essential element of the crime charged. Hence, evidence of the former conviction is relevant and material. It was not offered for the purpose of impeaching the credibility of defendant. Rather, it was offered to prove an essential element of the crime charged, i. e., that the accused has "previously been convicted of an unrelated murder or is serving a life sentence"; therefore, it was admissible in evidence. See State v. Woodfox, 263 La. 935, 269 So.2d 820 (1972). Under the circumstances, we find no violation of La.R.S. 15:495. Assignment of Error No. 2 is without merit.

DECREE
For the reasons assigned, the conviction and sentence are affirmed.
DIXON, J., concurs but is of the opinion the death penalty in Louisiana is unconstitutional.