337 So.2d 1201 (1976)
STATE of Louisiana
v.
Peter OVERTON, Jr.
No. 58109.
Supreme Court of Louisiana.
October 6, 1976.
*1203 Ronald P. Herman, Metairie, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Gretna, Abbott J. Reeves, Director, Research and Appeals Division, Metairie, for plaintiff-appellee.
DENNIS, Justice.
On December 12, 1974, defendant, Peter Overton, Jr., was charged by bill of information with the offense of armed robbery, a violation of La.R.S. 14:64. He was tried by a jury, convicted, and subsequently sentenced under the Habitual Offender Law to serve sixty years at hard labor, without benefit of parole, probation, or suspension of sentence. On appeal, he urges twelve assignments of error.
ASSIGNMENTS OF ERROR NOS. 1 and 5
Defendant questions the legality of a search warrant issued on December 5, 1974, which authorized a December 6 search of Peter Overton Sr.'s residence at 1420 Pailet Street, Harvey, Louisiana. Defendant attempted to show at the motion to suppress hearing that he did not reside at the address shown on the warrant, and consequently that there was no probable cause to believe that a search of the house indicated would produce evidence connected with the robbery. Defendant's wife, the sole witness at the hearing, testified that she and defendant lived with her mother at the time the search was conducted.
We find the defendant had no standing to object to the search. In Brown v. United States, 411 U.S. 223, 229, 93 S.Ct. 1565, 1569, 36 L.Ed.2d 208 (1973), the United States Supreme Court held that evidence seized under a search warrant was properly admitted against defendants who alleged a possessory interest in neither the premises searched nor the merchandise seized:
"* * * [T]here is no standing to contest a search and seizure where, as here, the defendants: (a) were not on the premises at the time of the contested search and seizure; (b) alleged no proprietary or possessory interest in the premises; and (c) were not charged with *1204 an offense that includes, as an essential element of the offense charged, possession of the seized evidence at the time of the contested search and seizure."
By defendant's own allegations, he was not present at the time of the search and had no proprietary or possessory interest in the premises. He was not charged with a possessory offense, and therefore possession of the trench coat and ski mask seized in the search was not an essential element of the offense charged. Furthermore, defendant alleged no possessory interest in the items seized. Thus, he had no basis for standing. Brown v. United States, supra; State v. Hicks, 301 So.2d 357 (La. 1974); State v. Vassel, 285 So.2d 221 (La. 1973); State v. Page, 251 La. 810, 206 So.2d 503 (1968).[*]
We note further that the testimony of defendant's only witness at the hearing does not persuade us that the address on the warrant was incorrect. The trial judge aptly remarked, "very frankly, the Court does not believe Peter Overton's wife." Actual residence at 1420 Pailet Street would accord defendant standing to challenge the search but simultaneously nullify his sole attack on the warrant.
These assignments are without merit.
ASSIGNMENTS OF ERROR NOS. 2 and 3
The State called as its first witness the deputy clerk of court, whose function is to receive evidence from police officers and file it in the Clerk's Office for safekeeping prior to trial. When the witness was asked whether he had received any evidence in connection with defendant's case, defense counsel objected on the ground that the question was premature since the relevancy of the evidence had not yet been demonstrated. The State argued that it was not offering the items into evidence, but rather was attempting to lay a proper foundation for their introduction. The court advised defense counsel that relevancy could be established later, and overruled the objection.
To admit demonstrative evidence at trial, the law requires that the object be identified either visually or by chain of custody, as the State was attempting to do here. State v. Dotson, 260 La. 471, 256 So.2d 594, 608 (1971). La. Code of Criminal Procedure article 773 provides:
"Neither the state nor the defendant can be controlled by the court as to the order in which evidence shall be adduced; but when the evidence requires a foundation for its admission, the foundation must be laid before the evidence is admissible."
The State was taking appropriate steps to lay a foundation for the introduction of the evidence and the court properly refused to restrict it in the conduct of its case. See State v. Mitchell, 311 So.2d 888 (La.1975).
These assignments are without merit.
ASSIGNMENT OF ERROR NO. 4
This assignment relates to the court's denial of defendant's motion for a mistrial, *1205 based upon an allegedly prejudicial remark by a prosecution witness.
In its motion to suppress, the defense had contested the validity of the warrant to search 1420 Pailet Street in Harvey, claiming that there was no probable cause to believe that defendant resided there. In order to establish what had led police officers to that address, the district attorney questioned the officer conducting the search as follows:
"Q. And for what premises did you get that search warrant?
"A. 1420 Pailet Street in Harvey.
"Q. And did you have any information concerning that premises that led you to get a warrant for that address?
"A. Our records and identification section, we received an address 1420 Pailet Street as being his last known address.
"Q. For whom, sir?
"A. Peter Overton, Jr." (Emphasis supplied.)
Defense counsel promptly requested that the jury be removed from the courtroom and moved for a mistrial, arguing that the reference to the "records and identification section" indicated that defendant had a police record. In denying the motion, the trial court reasoned:
"I doubt if the jury even knows what R&I means and our records could mean anything. It would take some mental gymnastics for the jury to connect up all these things and to try to figure out this man had a prior conviction."
Louisiana Code of Criminal Procedure article 770 provides:
"Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
"* * *
"(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible.
"* * *."
An impermissible reference to another crime deliberately elicited of a witness by the prosecutor would be imputable to the State and would mandate a mistrial. See State v. Lepkowski, 316 So.2d 727 (La. 1975). However, we agree with the trial judge that the recondite reference at issue here could not have suggested to the jury that defendant had a prior criminal record. As the witness testified out of the jury's presence, a person's name might be on file with the records and identification section for innocent reasons, such as involvement in a traffic accident. The ruling of the trial judge was correct.
This assignment is without merit.
ASSIGNMENT OF ERROR NO. 6
Defense counsel objected to the officer's identification of the items he seized in the search and to their subsequent admission into evidence.
The officer testified that in executing the search warrant he retrieved from a closet a green trench coat containing a red ski mask in one of its pockets. The prosecutor then displayed to the witness State's Exhibit No. 1, a red ski mask, and after the witness had identified the object asked, "Where have you seen that previously?" Defense counsel objected, claiming that the question was leading. This was proper procedure for establishing the identity of the evidence, as the State was required to do. State v. Dotson, supra. The question did not suggest the answer which the witness was to deliver, and consequently, was not leading. La.R.S. 15:277.
Defense counsel also complained that the State did not demonstrate that the relevancy of this evidence was sufficient for its admission in evidence. The victim of the robbery had previously testified that her assailant wore a red ski mask, and the officer had stated that the mask and coat in which the mask had been discovered were recovered from what his records indicated to be defendant's residence. This testimony clearly established the relevancy of these items; hence they were properly received in *1206 evidence by the trial court. State v. Monk, 315 So.2d 727 (La.1975).
This assignment is without merit.
ASSIGNMENT OF ERROR NO. 7
Persisting in his attempt to establish that defendant did not reside at 1420 Pailet Street, and consequently that the evidence seized there could not be related to defendant, defense counsel inquired of the officer who executed the search:
"Q. Did you subsequently learn at the time you executed the search warrant that my client lived at another address on Robinson Street?
"A. At the time that search warrant was executed I had reason to believe that Peter Overton, Jr. was living on Pailet Street.
"Q. Now, I am going to ask you again for you to answer my questions. My question is this: At the time you executed the search warrant did you learn that Peter Overton was living at another address, yes or no?
"A. No, living, no.
"Q. Did you locate him at another address?
"A. Yes, sir, uh-huh."
On redirect examination the State asked the witness what he had learned about defendant's residence when he executed the warrant. He responded, "I learned that he was living on Pailet Street." Defense counsel objected: "I object, Your Honor, he hasn't laid any proper foundation by whom did he learn."
The prosecutor then asked the witness from whom he had gotten his information, and when he answered, "Peter Overton, Sr.," defense counsel complained that this was hearsay. The court correctly ruled that defense counsel had opened the door to this area on cross-examination and that it was a proper subject for redirect examination. La.R.S. 15:281. Defense counsel may not approach a prohibited area, make misleading suggestions about what is to be found there, and then close the door to clarification behind him. Where defense counsel went on cross-examination, the State had the right to follow on redirect. Furthermore, defense counsel did not initially object to the hearsay nature of the testimony but rather encouraged the prosecutor to solicit the source of the witness' information. There was no basis for complaint when this was done.
This assignment is without merit.
ASSIGNMENT OF ERROR NO. 8
Defendant claims that the court erred in refusing to grant a motion for directed verdict at the close of the State's case. Our review is limited to a determination of whether there is a total lack of evidence to prove a crime or an essential element thereof. State v. Douglas, 278 So.2d 485 (La.1973). The victim of the crime testified that on December 2, 1974, two men, one of whom was armed with a gun, entered Aaron's Lounge where she worked as a barmaid, took the money from the register and her pocketbook and left. An eyewitness to the crime was positive in his identification of defendant as one of the robbers.
Clearly, there was "some" evidence to sustain a conviction. An attack upon the sufficiency of the evidence is not properly directed to this Court. State v. Evans, 317 So.2d 168 (La.1975).
This assignment is without merit.
ASSIGNMENT OF ERROR NO. 9
Defendant moved for a new trial on the ground that the verdict was "contrary to the law and the evidence." His argument was directed at a minor inaccuracy in the eyewitness' identification: the witness testified that the robber whom he recognized as defendant sported a gold star on one of his front teeth, whereas the design on defendant's tooth was cross-shaped. The trial court found this complaint insufficient to warrant a new trial.
Defendant's argument presents nothing for this Court's review, which is confined to allegations that there is no evidence of the crime charged or an essential *1207 element thereof. La.C.Cr.P. art. 858; State v. Woods, 327 So.2d 405 (La.1976).
Defendant also reasserted in his motion various allegedly prejudicial errors previously considered herein and dismissed.
This assignment is without merit.
ASSIGNMENTS OF ERROR NOS. 10, 11, and 12
The remaining assignments of error relate to defendant's sentencing under the Habitual Offender Law, La.R.S. 15:529.1.
First, defendant argues that the sentence which might have been imposed under the Habitual Offender Law was so disproportionate to the offense he committed as to be "excessive" under Article I, § 20 of the Louisiana Constitution of 1974. Defendant's third felony conviction, in this case for armed robbery, subjected him to a prison term of 49½-198 years without benefit of parole, probation, or suspension of sentence. La.R.S. 15:529.1(A)(2); La.R.S. 14:64. He was in fact sentenced to serve a term of sixty years without benefit of parole, probation, or suspension of sentence, less than two-thirds the maximum sentence for a first offense. We do not find this too severe a punishment for a third serious offense. See State v. Walker, 328 So.2d 87 (La.1976).
Defendant also contends that because a prison term of 198 years is the equivalent of life imprisonment, prosecution should have been initiated by grand jury indictment under La.Const.1974, Art. I, § 15. Multiple offender charges are not prosecutions for crimes but enhanced penalty proceedings for previous convictions, and consequently do not fall within the cited constitutional provision. State v. Williams, 326 So.2d 815 (La.1976).
The district attorney's discretion to enforce the multiple offender law selectively is claimed to be unconstitutional. In the absence of a showing that a policy of selective enforcement is deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification, there is no constitutional infringement. Oyler v. Boles, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962).
Defendant objected to the trial court's qualification of a State witness as an expert in the filed of fingerprint identification. The witness had graduated from the F.B.I. Fingerprint School in Baton Rouge, and had worked as a fingerprint technician for the Jefferson Parish Sheriff's Office for two and a half years. We find that the trial court did not abuse its discretion in ruling that the witness' past training and experience established his competency to testify on the subject of fingerprint identification. La.R.S. 15:466; See State v. Richmond, 278 So.2d 17 (La.1973).
Defendant's complaint that his prior arrest records and fingerprint cards on file with the Jefferson Parish Bureau of Identification were improperly admitted is likewise without merit. These documents were all properly certified and were admissible as public records. La.R.S. 15:581.16. Contrary to defendant's allegation that the fingerprints were nowhere identified as his, the expert testified that he had examined the prints from each arrest record, including the armed robbery which was the subject of the instant prosecution, and found that they all came from the same individual.
Defendant makes a number of additional arguments which were not designated in his assignments of error and thus are not properly presented for our review. La.C.Cr.P. art. 920.
For the foregoing reasons, defendant's conviction and sentence are affirmed.
AFFIRMED.
SANDERS, C. J., and DIXON and MARCUS, JJ., concur.
NOTES
[*] A different result on standing would follow under the 1974 Louisiana Constitution (effective midnight December 31, 1974). The federal rule of standing, which was adopted by this Court in Hicks, supra, Vassel, supra, and Page, supra, was "premised on a recognition that the need for deterrence and hence the rationale for excluding the evidence are strongest where the Government's unlawful conduct would result in imposition of a criminal sanction on the victim of the search." United States v. Calandra, 414 U.S. 338, 348, 94 S.Ct. 613, 620, 38 L.Ed.2d 561 (1974). However, our new constitution abandoned this reasoning to provide: "[a]ny person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court." Article I, § 5. This change in the law avails defendant nothing, however, because La. Const.1974, Art. XIV, § 26 states: "[t]his constitution. . . shall not create any right or liability which did not exist under the Constitution of 1921 based upon actions or matters occurring prior to the effective date of this constitution."

Defendant's position would not be improved by a finding that he had standing. Although he made sufficiently specific allegations to permit an inquiry into the truthfulness of the affidavit, State v. Melson, 284 So.2d 873 (La.1973); State v. Giordano, 284 So.2d 880 (La.1973), he did not as observed in the text convincingly establish at the hearing that his address was misrepresented by the affiant.