554 So.2d 1292 (1989)
STATE of Louisiana
v.
Clarence Joseph JACK.
No. KA 88 2026.
Court of Appeal of Louisiana, First Circuit.
December 19, 1989.
*1293 Bernard E. Boudreaux, Jr., Dist. Atty. and Walter J. Senette, Jr., Asst. Dist. Atty., Franklin, for the State.
Don J. Hernandez, Chief Indigent Defender, Franklin, for defendant.
Before LOTTINGER, CRAIN and LeBLANC, JJ.
CRAIN, Judge.
Clarence Joseph Jack (defendant) was indicted for second degree murder, a violation of La.R.S. 14:30.1, in connection with the shooting death of Kerry Johnson. Defendant was tried by a jury, which convicted him as charged. Subsequently, the trial court sentenced defendant to the mandatory term of life imprisonment at hard labor, without benefit of probation, parole or suspension of sentence.
Originally, defendant appealed under docket number KA 88 1255 of this Court. However, in State v. Jack, No. KA 88 1255, (La.App. 1st Cir., decided November 7, 1988), we remanded the matter to the trial court. In so doing, we noted that the trial court had allowed defense counsel to withdraw her representation of defendant on appeal, leaving defendant proceeding in proper person, and that the record did not indicate there had been an adequate waiver of counsel by defendant. Accordingly, we instructed the trial court to determine if defendant wished to and was able to represent himself on appeal and, following that determination, to cause the appellate record to be supplemented accordingly and relodged with the Court.
In conforming with our instructions, the trial court determined on remand that defendant wanted court-appointed counsel to represent him on appeal. Accordingly, the trial court appointed counsel to represent defendant on appeal. Through that counsel, defendant now appeals, urging six assignments of error. Assignments of error numbers two and six were not briefed on appeal and, therefore, are considered abandoned. Uniform RulesCourts of Appeal, Rule 2-12.4.
The record reflects that Kerry Johnson (the victim) and Denise McBride started having a romantic relationship during June of 1987. Prior to that time, Denise and defendant had maintained a romantic relationship and they were the parents of a baby girl.
*1294 On the morning of July 7, 1987, defendant brought the baby to the victim's residence where Denise was at that time. An argument apparently erupted between defendant and the victim. Denise McBride testified that, thereafter, on that same day she and the victim proceeded to leave the victim's residence in his car. The victim was driving the car and Denise was seated on the front passenger seat. As they were leaving, defendant stopped his car in the highway, blocking the victim's car. Thereafter, defendant began to drive his car forward along the highway. The victim followed, and when defendant stopped his vehicle, the victim's car struck defendant's car. At some point, with both vehicles proceeding forward, defendant's car struck the victim's car on its passenger side. With defendant's vehicle along the side of the victim's car, the victim asked Denise to lower the window on the passenger side. After Denise apparently complied with the request, the victim used his gun to fire two shots at defendant through the window. The victim notified the police concerning the incident.
David J. McCoy, Jr., an officer with the St. Mary Parish Sheriff's Department, spoke to the victim and defendant concerning the incident. According to McCoy, the victim and defendant gave conflicting accounts of the incident referred to above; but each of them agreed that he would stay away from the other.
Malcolm Jones' testimony revealed that at about 8:00 p.m. on July 9, Jones and defendant were together in Jones' car at the victim's Play House Club. While they were there in Jones' car, the victim came out of the establishment, started fussing and threatened a fight. Defendant suggested to Jones that they leave. They departed in Jones' car. Jones took defendant to a location about a block or two from the victim's residence where he left defendant at about 9:30 p.m.
Denise McBride testified that at about 8:30 to 9:30 a.m. on the following morning defendant entered her room and told her he had killed the victim and that he was "fixing to skip town." Denise contacted the police and informed them that defendant had told her that he had killed the victim.
Investigating officers went to the residence of Marion McBride where they spoke to Marion and Denise McBride. Thereafter, the officer proceeded to the victim's residence where they found the victim's body in a weeded area.
Shortly thereafter, the police were informed as to where defendant could be found. The police went to that location, where defendant surrendered to the officers and was given his constitutional rights. Later that same day, after defendant was again advised of his constitutional rights, he signed an advice of rights and waiver of rights form and made a statement to the police.
At trial, Officer McCoy testified as to the content of the statement. Defendant related that he and the victim had been having arguments concerning his ex-girlfriend, Denise McBride, and that Malcolm Jones had taken him to Edmond Lane at about 11:00 p.m. (on July 9). From that location, defendant walked to the victim's residence in order to talk to him. Defendant waited for the victim to come home. Finally, the victim arrived at his residence and at about 2:00 a.m. (on July 10) defendant and the victim started talking to each other. Defendant asked the victim why he had taken his girlfriend. They had "a lot of words," which led to the victim grabbing the door to his residence and telling defendant to "wait here until I get back." Defendant decided that he would not allow the victim to go inside his residence; and he shot the victim, because he did not know what the victim was "going get".
Dr. Evariste J. Trahan, the coroner of St. Mary Parish, performed an autopsy on the victim's body at about 11:00 a.m. on July 10. The autopsy disclosed that the victim died as a result of two gunshot wounds to the head, either of which would have been fatal. Dr. Trahan estimated that the victim had died eight to ten hours prior to the autopsy, i.e., at about 1:003:00 a.m.
ASSIGNMENT OF ERROR NO. ONE:
By means of this assignment, defendant contends that the trial court erred by denying *1295 his motion for mistrial and refusing to admonish the jury, when a state witness, Officer David J. McCoy, Jr., made a statement during his trial testimony referring to other crimes allegedly committed by defendant. Defendant submits that, by allowing the statement into evidence, the trial court eliminated any hope he had of receiving a fair trial.
During McCoy's direct examination, he testified that, on the date of the instant offense, he and Detective Fleming received a call that there was someone at Marion McBride's residence on Charenton Road. In response, they proceeded in their police unit to the residence, where they spoke to Marion and Denise McBride. The prosecutor then asked McCoy the following question: "What did you learn by talking to the individuals you named?" McCoy answered: "Ms. Marion McBride said that while they were asleep that Mr. Clarence Jack had come in the house without permission, went into the room and got Denise McBride out by gunpoint." At that juncture, defense counsel entered an objection and asked that he be allowed to make a motion outside the presence of the jury. The jury was removed from the courtroom; and, out of the jury's presence, defense counsel moved for a mistrial on the basis that the above answer given by McCoy constituted inadmissible evidence of another crime, aggravated kidnapping, prohibited under La. C.Cr.P. art. 770. In articulating the state's position, the prosecutor stated, in pertinent part, the following:
[T]he course of conduct that the defendant went on on the morning of July 10th after the shooting is all part of the res gestae as far as to show his state of mind, to show how he was arrested, where he was arrested, the fact that he was armed at the time that he was arrested, all the facts and circumstances surrounding the charge of second degree murder; and I think the State has a right to show his state of mind and, if for no other reason then, to indicate to the jury the specific intent which he had in the earlier killing and that everything that happened that morning is part of the res gestae.
In its ruling denying defense counsel's motion for mistrial, the trial court noted that the conduct referred to in McCoy's answer could be construed as evidence of a crime other than the crime for which defendant was on trial. However, the trial court concluded that La.C.Cr.P. art. 770 was inapplicable for two reasons. First, the alleged other crimes evidence was admissible evidence as part of the res gestae and under the state of mind exception to the hearsay rule; and, second, the reference to the alleged other crime(s) had been made by a testifying witness rather than a judge, district attorney or court official. Thereafter, the jury was returned to the courtroom; and no further testimony was adduced as to the alleged other crimes evidence.
We reach no conclusion as to whether the trial court erred by concluding that the conduct referred to in McCoy's answer was admissible as part of the res gestae. However, we agree with the trial court that La.C.Cr.P. art. 770 is not controlling in this instance, and that La.C.Cr.P. art. 771 does not require a mistrial.
Louisiana Code of Criminal Procedure article 770 provides, in pertinent part:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
* * * * * *
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
* * * * * *
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
*1296 A police officer is not a court official within the meaning of La.C.Cr.P. art. 770. State v. Watson, 449 So.2d 1321, 1328 (La.1984), cert. denied, 469 U.S. 1181, 105 S.Ct. 939, 83 L.Ed.2d 952 (1985); State v. Brogdon, 457 So.2d 616, 624 (La.1984), cert. denied, 471 U.S. 1111, 105 S.Ct. 2345, 85 L.Ed.2d 862 (1985). Instead, the applicable provisions contained in La.C.Cr.P. art. 771 provide, in pertinent part, as follows:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
* * * * * *
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
A mistrial under the provisions of La. C.Cr.P. art. 771 is at the discretion of the trial court and should be granted only where the prejudicial remarks of the witness make it impossible for the defendant to obtain a fair trial. State v. Smith, 418 So.2d 515, 522 (La.1982).
The jurisprudence interpreting La.C.Cr.P. art. 771 has held that an impermissible reference to another crime deliberately elicited of a witness by the prosecutor would be imputable to the state and would mandate a mistrial. State v. Madison, 345 So.2d 485, 494 (La.1977); State v. Overton, 337 So.2d 1201, 1205 (La.1976). However, unsolicited and unresponsive testimony is not chargeable against the state to provide a ground for mandatory reversal of a conviction. State v. Fowlkes, 352 So.2d 208, 212 (La.1977). We are unable to clearly and unequivocally conclude that the reference was not responsive to the prosecutor's broad, vague question to Officer McCoy. However, we cannot find, nor does defendant claim, that the reference to other crimes was deliberately obtained by design of the prosecutor to prejudice the rights of defendant. Consequently, La.C.Cr.P. art. 771 does not mandate a mistrial.
As for the trial court's failure to admonish the jury after the officer's remark, La. C.Cr.P. art. 771 mandates a request for an admonishment. As a result, the trial court's failure to instruct the jury to disregard the remark referring to other crimes allegedly committed by defendant, absent a request, was not, in itself, reversible error. State v. Tribbet, 415 So.2d 182, 185 (La.1982).
This assignment of error is without merit.
ASSIGNMENT OF ERROR NOS. THREE, FOUR AND FIVE:
We have grouped these assignments for purposes of our review, because each relates to the report of the examination conducted by state witness Pat Lane in regard to state exhibit number ten, a two-barreled.22 derringer which defendant threw to the ground at the time he surrendered to the police and/or Lane's testimony in regard to his examination of the weapon.
In assignment of error number three, defendant essentially contends that the admission of Lane's testimony as to the analysis of parts of guns, the interrelationship of those parts and the operational mechanics of guns and parts of guns constituted reversible error, because that testimony related to matters which exceeded the field of expertise in which the witness had been qualified and accepted by the trial court as an expert. In assignments of error numbers four and five, defendant contends that he was denied effective discovery and surprised in regard to Lane's report which was not produced until the second day of trial shortly before Lane testified.
The record reflects that Lane was qualified and accepted by the trial court as an expert witness in the field of firearms identification. *1297 Thereafter, on direct examination, Lane testified that he had conducted a firearm identification or a ballistic match to attempt to determine whether or not a bullet removed from the victim's body during the autopsy had been fired from the .22 derringer. At that juncture, defense counsel entered an objection; and the jury was removed from the courtroom.
Outside the jury's presence, defense counsel informed the trial court that Lane was about to testify that the derringer could only have been fired from one of its barrels. In that regard, defense counsel argued that the anticipated testimony should not be admitted in evidence on the ground that the testimony was "more prejudicial than probative." The court expressed its concern as to the speculative nature of any testimony in regard to whether or not two shots would have to have been fired from the same barrel at a date earlier than the date Lane examined the gun, but the court stated that it thought Lane could testify that, at the time he examined the gun, in order to fire two shots from the gun both would have to have been fired from the same barrel.
In response, defense counsel moved for a recess to enable the defense to have a defense expert witness examine the weapon. Defense counsel also stated that the basis of his objection was that the defense had been denied discovery by not being afforded an opportunity to examine or test the weapon and not being furnished a copy of Lane's report until approximately thirty to forty minutes before Lane began his testimony. The defense also acknowledged that the state had not received the report until the second day of trial, i.e., the day Lane testified. In denying defense counsel's objections, the trial court opined that it wanted to afford defendant an opportunity to have the gun examined by another expert; and the record reflects that, prior to the resumption of Lane's testimony, such an expert had already been located.

TESTIMONY ALLEGEDLY EXCEEDING THE EXPERT'S FIELD OF EXPERTISE
The record reflects that the ground for objection argued on appeal, in assignment three, that Lane gave testimony which exceeded the scope of his field of expertise, represents a new ground for objection never articulated during defendant's trial. A new ground for objection cannot be raised for the first time on appeal. La.C.Cr.P. art. 841; State v. Hawkins, 496 So.2d 643, 648 (La.App. 1st Cir. 1986), writ denied, 500 So.2d 420 (La. 1987). If defendant had urged the new ground contemporaneously as required by La.C. Cr.P. art. 841, the trial court would have had the opportunity to consider the nature of the objection. Additionally, the state would have had an opportunity to qualify the expert witness as to matters which the trial court might have deemed outside the field of expertise in which the witness had been qualified as an expert. In any event, because the ground constitutes a new ground raised for the first time on appeal, the issue is not properly before us for review. State v. Ford, 349 So.2d 300, 305 (La.1977).

ALLEGED DENIAL OF DISCOVERY
The record reflects that, on the third day of trial, after the jury retired to deliberate and prior to its rendering a verdict, the prosecutor and defense counsel made statements before the court (out of the jury's presence) concerning the alleged denial of discovery. In that regard, the prosecutor stated that he and defense counsel had located an independent expert who came to the courtroom (on the preceding day), after the trial had recessed, and examined the .22 derringer to the satisfaction of the defense. Defense counsel acknowledged the accuracy of the foregoing statement, and he additionally made the following statement, in pertinent part:
[The expert] had ample opportunity to inpsect (sic) the piece of evidence, discuss its operations not only with the State's expert, but with counsel as well; and we feel that as much as practical at that late date we were given an opportunity to inspect, even though it was in the course of trial. I think the State has complied *1298 with its continuing duty to disclose. It became evident that the State did not come into possession of the report and the weapon until the same time that defense counsel did; and, therefore, we're satisfied that the State complied with its continuing duty to disclose.
Viewed in the light of the foregoing comments of defense counsel, we can reach no conclusion other than that defendant waived the claims he urged in assignments four and five.
Accordingly, these assignments lack merit.
ARGUMENT IV IN DEFENDANT'S BRIEF:
In this argument, defendant asserts that the mandatory life sentence provided in La.R.S. 14:30.1 is contrary to the sentencing guidelines contained in La.C.Cr.P. art. 894.1 and is unconstitutional, because it lacks a rational basis, denies due process and equal protection of the law, and constitutes cruel and unusual punishment. However, this argument represents an additional argument not formally assigned as error. In accord with the well-established jurisprudence of the Louisiana Supreme Court under the provisions of La.C.Cr.P. arts. 844 and 920, this Court will not consider such an argument which is neither assigned as error nor related to error patent on the face of the record. See State v. Spears, 350 So.2d 603, 605 n. 1 (La.1977); State v. Overton, 337 So.2d 1201, 1207 (La.1976). In any event, the Louisiana Supreme Court has repeatedly held that the mandatory life without benefit sentence for second degree murder is constitutional. See State v. Parker, 416 So.2d 545, 552 (La.1982), and cases cited therein.
CONVICTION AND SENTENCE AFFIRMED.