636 So.2d 933 (1994)
STATE of Louisiana
v.
Tony J. PRICE and Kevin Trosclair.
STATE of Louisiana
v.
Tony J. PRICE.
Nos. 93 KA 0625, 93 KA 0626.
Court of Appeal of Louisiana, First Circuit.
March 11, 1994.
Rehearing Denied May 18, 1994.
Writ Denied June 17, 1994.
*935 Jason P. Lyons, Houma, for plaintiff-appellee.
Alvin G. Baham, Gretna, and Andre P. Guichard, New Orleans, for defendant-appellant Tony J. Price.
Indigent Defender Bd., Houma, for defendant-appellant Kevin Trosclair.
*936 Before WATKINS, SHORTESS and FOGG, JJ.
SHORTESS, Judge.
Tony James Price and Kevin Trosclair (defendants) were charged by an amended bill of information with armed robbery. LSA-R.S. 14:64. They pled not guilty to the amended charge and, after a trial by jury, were found guilty as charged. Price was subsequently adjudicated a second felony habitual offender and sentenced to 99 years at hard labor without benefit of parole, probation, or suspension of sentence. Trosclair was sentenced to 65 years at hard labor without benefit of parole, probation, or suspension of sentence. Both defendants have appealed.[1]
Leatha LeBouef, Price, and Trosclair planned to set Abbey Nelton (victim) up so they could rob him. LeBouef called the victim on March 16, 1990, and asked him to meet her to have sexual intercourse. After they met, LeBouef told the victim to drive her to an area behind Montegut Middle School in Terrebonne Parish, which he did. LeBouef suggested they get in the truck bed. When the victim got out of the cab, he was struck on the head with a baseball bat by Trosclair. Trosclair hit him numerous times with the bat while Price searched the victim's truck. When Price found a bag of money containing $9,000.00, the trio ran off and left the victim. He was found the following morning by his son, lying in his truck and bleeding from his head and face. Nelton suffered serious and permanent physical and mental injuries resulting from the attack.
Defendants and LeBouef went to her home to split the money, and then spent the night at a hotel in Houma. The following day they left to spend a few days in Florida. After returning from Florida, defendants and LeBouef were arrested for the crime. LeBouef gave a statement to the police concerning her part and defendants' involvement in the crime.

ASSIGNMENT OF ERROR NUMBER ONE:
Defendants contend the trial court erred in denying their objection to an amended bill of information filed on July 17, 1991, naming both Price and Trosclair on the same charge. Defendants argue a potential conflict existed between them which could have resulted in antagonistic defenses.
Before trial, defense counsel informed the court defendants intended to waive their rights to individual counsel regardless of the possible conflict of interest. The trial court then questioned defendants. Both indicated they wanted defense counsel to represent them despite any possible conflicts of interest. When the questioning was completed, an amended bill of information was filed which charged both defendants with armed robbery. At this time counsel objected, stating defendants originally were separately charged and they felt they had a "much better chance in defending their case if they were tried separately." The trial court overruled the objection. Defendants then were arraigned. They pled not guilty to the charge.
Defendants who are jointly indicted are to be tried together unless the court finds that justice requires a severance. La. C.Cr.P. art. 704. The courts have permitted a severance to codefendants whose defenses are antagonistic to each other. See State v. Williams, 416 So.2d 914 (La.1982). Defenses are antagonistic when each defendant intends to exculpate himself by putting the blame for the offense on a codefendant. State v. Thibodeaux, 315 So.2d 769, 771 (La.1975). However, a mere allegation that the defenses are antagonistic is insufficient because convincing evidence of actual antagonism must be present to justify a severance. See State v. Prudholm, 446 So.2d 729, 741 (La.1984).
An accused is not entitled to a severance as a matter of right; the decision is one resting within the sound discretion of the trial judge. A denial of a motion to sever will not be overturned on appeal absent a *937 clear abuse of discretion. State v. Gaskin, 412 So.2d 1007, 1012 (La.1982). Reversal of a conviction for failure to sever where antagonism is shown is not always mandated unless prejudice can be shown. State v. McGraw, 366 So.2d 1278, 1285 (La.1978).
Defendants in brief argue that defense counsel attempted to show that a potential conflict existed between them and that antagonistic defenses might have arisen. Trosclair states the law is clear that if antagonistic defenses are possible a severance should be granted. Price argues he could have shown Trosclair committed the armed robbery. He also argues that through the cross-examination of Leatha LeBouef, he was able to establish his defense was antagonistic to Trosclair. Each defendant failed to establish the probability that the other would in fact testify at a separate trial and present exculpatory evidence. After reviewing the record, we are unable to find any convincing evidence of antagonistic defenses. We find no abuse of discretion in the trial court's ruling. This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER TWO:
Defendants contend the trial court erred in denying their challenge for cause of a potential juror, Lester Lapeyrouse.[2] Defendants argue Lapeyrouse's relationship (uncle by marriage) with a witness, Officer Ronald Bergeron, disqualified him from serving on the jury.
We need not discuss this assignment of error in depth because we find defendants were clearly not prejudiced by the denial of their challenge for cause. The entire jury (including the alternate) was seated before the State and defense were called to accept or deny Lester Lapeyrouse as a juror. Defendants were never required to use a peremptory challenge on Lapeyrouse that could have been saved to use on another potential juror. After considering the record of the voir dire examination and subsequent discussion regarding the challenge, we find no abuse of discretion in the trial court's denial of defendant's challenge for cause of Lester Lapeyrouse. This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER THREE:
Defendants argue the trial court erred in denying their objection to the showing of the photograph of the victim's injuries. They argue the photograph introduced into evidence served no other purpose other than to inflame the jury.
Photographs which illustrate or shed light upon any fact or issue in the case or are relevant to describe the person, place or thing depicted are generally admissible. State v. Jones, 593 So.2d 1301, 1308 (La.App. 1st Cir.1991), writ denied, 620 So.2d 868 (La.1993). The admission of gruesome photographs will not be overturned unless it is clear that the prejudicial effect of the photographs outweighs their probative value. State v. Hosford, 572 So.2d 242, 245 (La.App. 1st Cir.1990), writ denied, 576 So.2d 27 (La. 1991).
State exhibit number five is a photograph taken of the victim which shows head injuries inflicted during the robbery. The victim testified he was hit in the head. However, he also testified that because of these injuries he was unable to remember certain details about the assailant and what happened just before, during, and after the crime. The photograph corroborated this testimony. The photograph also helped to prove a dangerous weapon was used to commit the robbery. While a bat, in and of itself, is not a dangerous weapon, the manner in which it is used can make it a dangerous weapon. See LSA-R.S. 14:2(3); State v. Bonier, 367 So.2d 824 (La.1979). The photograph showing the injuries the victim received from being beaten *938 with a bat helped show the bat was used as a dangerous weapon.
We find the introduction of State exhibit number five was not error. The photograph, while unpleasant, was not so gruesome that it overwhelmed reason. In balancing the probative value of the photograph with the remote likelihood that the jury was inflamed simply upon seeing the picture, we find its probative value outweighed its possible inflammatory effect. This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER FOUR:
Defendants contend the trial court erred in denying their objection to questions directed to a State witness, Ellery Nelton, who is the victim's son. Ellery testified he found his father behind Montegut Middle School at approximately 5:45 a.m. the day after he was reported missing. He found the victim in his truck, bleeding from the head and face. When the State began to question Ellery about his conversation with his father at the scene, defendants made a hearsay objection. The trial court overruled the objection.
Ellery then testified that when he found his father, he asked him who "had beat him up, hit him, or whatever," and his father said "it was the girl's boyfriend." The court asked, "What's that?" Ellery repeated, "The girl's boyfriend that hit him. And I asked him, `Which girl? Which boyfriend?' He didn't know. He didn't answer."
Ellery also testified:
He asked me about the money underneath the seat. He asked me if the money was still there and I started to look underneath the seat through a bunch of trash and ... through the blood and there was a pouch still from, I think, Progressive Bank with some money in it underneath the seat.
He asked me if there was a brown paper bag with more money and I said "No, that was the only bag with money in it."
Ellery's testimony regarding the victim's statement that it was the "girl's boyfriend" who hit him could be construed as hearsay as it was a statement, other than one made by the declarant while testifying at the trial, offered in evidence to prove the truth of the matter asserted. However, if considered to be hearsay, the trial court's allowance of this testimony was harmless error. The testimony was corroborative of the victim's previous testimony in which he identified Trosclair as the person who hit him on the head. Additionally, LeBouef testified she was part of the plan to hit and rob the victim. She testified Trosclair was her boyfriend at the time of the crime, and he was the one who hit the victim on the head with the bat. Thus, although Ellery's statements were essentially hearsay, defendants were not prejudiced by the remarks as they were merely cumulative and corroborative of other testimony presented by the State's witnesses. State v. Mason, 447 So.2d 1134, 1138 (La.App. 1st Cir.1984).[3]
With regard to Ellery's testimony about questions his father asked about the money, this evidence is not hearsay because it was offered non-assertively to prove a conversation had taken place, and not to prove the truth of the matter asserted. See State v. Mason, 447 So.2d at 1138. The victim's questions were not offered to prove the truth of the matter asserted. However, Ellery's statements in which he responded to the victim's questions were offered to prove the truth of the matter asserted, that money was missing from the victim's truck. Ellery's *939 statements, and not the victim's questions, helped to establish the taking. Ellery was the declarant of the statements, and he was the one who testified at trial regarding his statements. Thus, his statements are not hearsay. This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER FIVE:
Defendants contend the trial court erred in denying their motion for a mistrial regarding the comments of a State witness, Leatha LeBouef. Defendants assert the references were prejudicial which entitled them to a mistrial.
A mistrial under the provisions of Code of Criminal Procedure article 771 is at the discretion of the trial court and should be granted only where the prejudicial remarks of the witness make it impossible for the defendant to obtain a fair trial. State v. Jack, 554 So.2d 1292, 1296 (La.App. 1st Cir. 1989), writ denied, 560 So.2d 20 (La.1990). The jurisprudence interpreting article 771 has held that an impermissible reference to another crime deliberately elicited of a witness by the prosecutor would be imputable to the State and would mandate a mistrial. State v. Madison, 345 So.2d 485, 494 (La. 1977); State v. Overton, 337 So.2d 1201, 1205 (La.1976).
During direct examination of Leatha LeBouef the following colloquy took place:
Q. [by the prosecutor] What did [y'all] do the next morning?
A. [Ms. LeBouef] We got up....
Q. I take it [y'all] went to bed when you checked in?
A. Well....
Q. What did [y'all] do in the room, let me ask you that?
A. Well, we got up. Tony took Kevin to do his community service.
Q. Let's back up to where, did [y'all] do anything in the room ...
At this point defense counsel asked that the jury be removed and moved for a mistrial based on the witness's reference to other crimes evidence. Defense counsel argued that it is "obvious to anyone who knows anything about the law that a person couldn't be doing community service work unless they were convicted of a crime." The prosecutor argued there was no indication as to why or what type of community service Trosclair was performing. There was no mention of whether the service was voluntary or involuntary. The trial court denied defendants' motion. The court felt no remark was made specifically about a crime. The court also stated a reference to someone performing community service does not necessarily refer to punishment for a crime; the witness could have been referring to volunteer work. Further, defense counsel requested that the court not admonish the jury. The court did not admonish the jury; however, it admonished the witness not to make any references to any type of other crimes evidence during her testimony.
In this case, there is no showing of clear prejudice to defendants since neither the questioning by the prosecutor nor the witness's answers contained a factual reference to another crime. There is no indication defendants were unable to obtain a fair trial because of the above-quoted questions and answers. Consequently, article 771 does not mandate a mistrial. For the foregoing reasons, we find the trial court correctly denied defendants' motion for a mistrial. This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER EIGHT:
Defendants contend the trial court erred in denying their motion for a new trial. They argue that due to the cumulative impact of the assignments of error argued in their briefs, they were denied a fair trial and should have been granted a new trial. Having found all the assignments of error raised by defendants to be without merit, we likewise conclude this argument has no merit.

ASSIGNMENT OF ERROR NUMBER NINE:
Defendants contend the trial court erred in denying their motion for post-verdict judgment of acquittal as the verdicts of the jury were contrary to the law and evidence presented. They argue the State did not prove each element of the crime as the *940 victim did not testify anything was taken from him.
The standard of review for the sufficiency of evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude the State proved the essential elements of the crime beyond a reasonable doubt. See La.C.Cr.P. art. 821; State v. King, 563 So.2d 449, 456 (La.App. 1st Cir.), writ denied, 567 So.2d 610 (La.1990). The Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), standard of review incorporated in article 821 is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, Louisiana Revised Statute 15:438 provides the fact finder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. State v. McLean, 525 So.2d 1251, 1255 (La.App. 1st Cir.), writ denied, 532 So.2d 130 (La.1988). This court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder's determination of guilt. State v. Polkey, 529 So.2d 474, 476 (La.App. 1st Cir.1988), writ denied, 536 So.2d 1233 (La.1989).
The testimony of the victim alone is sufficient to prove the elements of the offense. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Johnson, 529 So.2d 466, 473 (La.App. 1st Cir.1988), writ denied, 536 So.2d 1233 (La.1989).
Revised Statute 14:64(A) provides:
Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.
The victim testified that at approximately 9:30 p.m. the day of the crime, he went to a house in Montegut, Louisiana, that he had been renovating to close it up so the rain would not get inside. The victim testified that after he left the house and was getting into his truck, Trosclair hit him on his head. The victim stated he did not know Trosclair very well but had seen him "once in a while" before that night. He made an in-court identification of Trosclair as the person who hit him. The victim testified that Trosclair hit him in the front of his head with a bat or a stick; that he did not remember being hit more than one time because he was unconscious; and that he did not remember anything after that until he woke up in the hospital.
On cross-examination, the victim denied seeing or speaking to LeBouef that night. He admitted he did not see Price and did not recall making any statements to Trosclair or to the police. He denied telling people he did not know who beat him. He stated during redirect examination that he had no doubt Trosclair was the person who hit him.
Ellery testified that his sister called him at approximately 11:00 p.m. and told him his father was missing; that he reported his father's disappearance to the sheriff's office and then began searching for him; that he found his father in his truck behind Montegut Middle School at approximately 5:45 a.m. the following day; that the victim was badly beaten and was bleeding from the head and face; and that he found a bank pouch containing money under the seat of the victim's truck but was unable to find a bag containing money the victim asked him to locate.
LeBouef identified both defendants in court and testified that she knew them both; that she had known the victim for approximately two years; that she was involved in the robbery of the victim; that Price, Trosclair, and Cheryl Price (Price's wife) were also involved in the robbery; that the robbery was Price's idea; that Price told her he knew the victim kept money in his truck; that Price instructed her to call the victim and tell him she would "give him sex" if he met her at 8:00 p.m. at a supermarket; that after she called the victim, Price told her to take him behind the school and tell him she wanted to get in the back of his truck so she could give "him a little bit"; and that *941 Price told her he would stop them before it went any further.
LeBouef testified that before meeting the victim at the supermarket, she dropped off Price and Trosclair behind Montegut Middle School; that she then parked the car and walked to the supermarket; that when she arrived at the supermarket, the victim was waiting for her; that she got into his truck and told him to drive to the area behind the school; that after they parked the truck, the victim started to raise her shirt; that she told him, "No, not here"; that they got out of the cab in order to get in the truck bed; that as soon as the victim got out of the truck and turned his head, Trosclair ran out of a ditch with a bat and "started swinging"; that all she could hear was the victim shouting, "You bastard, you bastard, stop"; that she knew defendants had a bat with them because they had picked it up before they left her home; that Price had a stocking over his head; that Price's face was painted black and Trosclair had just a little paint on his face; that she saw Trosclair hit the victim more than once with the bat; that while Trosclair was hitting the victim, Price was searching the inside of the truck; that she stood by the truck; and that Trosclair kept hitting the victim until Price found the bag containing the money.
LeBouef identified the bat and testified that as they left, Trosclair handed the bat to Price; that Price threw the bat into a water-filled ditch; that they went back to LeBouef's trailer where Cheryl Price was waiting; that after they got to the trailer, Price took the money out of the bag and began counting and separating it; that $9,000.00 was in the bag; that Price took $5,000.00 as his and Cheryl's share; that she and Trosclair were given $4,000.00 to split; that after they split the money, they spent the night at the Holiday Inn in Houma; that Trosclair registered at the hotel; that the next day they left the hotel, took a taxi to the New Orleans bus station, and rode to Fort Lauderdale, Florida, on the bus; that she and the Prices stayed approximately four days in Fort Lauderdale; that they bought souvenirs and clothes, and Price bought a car; that Trosclair had left the morning after they arrived in Fort Lauderdale; that she and the Prices returned to Houma in the car Price bought; that upon returning home, they hid the items they bought in Florida and the remaining money; and that she and Price left Price's new car in a parking lot of the South Louisiana Medical Center.
LeBouef stated that she did not see Trosclair when they returned from Florida until she saw him in jail; that Price and Cheryl were living with her at the time of the crime; that she had known Trosclair about two weeks prior to the crime, during which he did not have a job; and that at the time of the crime she and Trosclair were girlfriend and boyfriend.
Officer Mike Fanguy of the Terrebonne Parish Sheriff's Office testified that he investigated the crime; that he became suspicious of defendants and LeBouef after he began hearing rumors as to who had robbed the victim; that he obtained a statement from LeBouef concerning the beating and robbery of the victim; that LeBouef's statement was accurate as to what was revealed during the investigation; that because of LeBouef's statement the police were able to recover certain items associated with the crime, including the baseball bat used to beat the victim; and that he was unable to find anything in LeBouef's statement that was inaccurate.
Dr. Warren Williams, an expert in the field of neurosurgery, examined the victim. He testified the victim could have suffered memory impairment as a result of the injuries he sustained during the robbery.
Officer Ronald Bergeron of the Terrebonne Parish Sheriff's Office testified that he was in charge of securing evidence; that he photographed the crime scene area and went with other officers to LeBouef's home to help secure evidence; that the evidence they secured from LeBouef's home and the surrounding area included seven $100.00 bills, a Polaroid camera, a music box, wedding bands, clothing, and vehicle documents; and that LeBouef and Cheryl Price showed them where the evidence was located.
Sandra Waire testified she was employed with the Holiday Inn Hotel in Houma. She stated her records indicated Trosclair *942 checked into a room at the Holiday Inn at 10:46 p.m. on March 15, 1990. The records also indicated Trosclair checked out of the hotel the following day at 12:44 p.m. Trosclair paid for the hotel room in cash.
Nelvin LeBouef testified as a witness for the defense. He stated he talked with the victim about the incident, and the victim told him he did not have any idea who committed the crime. The victim also told him he could not remember if the crime took place at his house or the school.
Viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact could have found defendants guilty beyond a reasonable doubt of armed robbery. This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER TEN:
Defendants contend the sentences imposed upon them were excessive. At the time of sentencing, article 894.1 of the Louisiana Code of Criminal Procedure set forth items which must be considered by the trial court before imposing sentence.[4] The trial court need not recite the entire checklist of article 894.1, but the record must reflect it adequately considered the guidelines. State v. Herrin, 562 So.2d 1, 11 (La.App. 1st Cir.), writ denied, 565 So.2d 942 (La.1990). In light of the criteria expressed by article 894.1, a review for individual excessiveness should consider the circumstances of the crime and the trial court's stated reasons and factual basis for its sentencing decision. State v. Watkins, 532 So.2d 1182, 1186 (La. App. 1st Cir.1988).
Although a sentence falls within the statutory limits, it may be excessive. State v. Sepulvado, 367 So.2d 762, 767 (La. 1979). However, the trial court has great discretion in imposing a sentence within the statutory limits; such a sentence will not be set aside as excessive in the absence of manifest abuse of discretion. State v. Latiolais, 563 So.2d 469, 473 (La.App. 1st Cir. 1990).
Defendants were sentenced on November 7, 1991, prior to the enactment of the new sentencing guidelines. In imposing Price's sentence, the trial court considered the facts of the offense, defendant's criminal history, defendant's presentence investigation report (PSI), and the fact that he had been adjudicated to be a habitual offender. The court stated the PSI's recommendation was that Price receive the maximum sentence. The court further stated if the sentence were suspended or probation granted there was a serious risk Price would commit another crime. The court felt Price was in need of a custodial environment which could best be provided by his commitment to an institution. The court also stated any lesser sentence would deprecate the seriousness of this "horrendous crime." The court stated that Price's actions caused serious harm to the victim and that Price did not act under any provocation other than "his own greed." The court further stated Price's "conduct is not governed by his conscience; it's an animal-like conduct with no conscience of remorse."
In imposing Trosclair's sentence, the trial court pointed out Trosclair had at least one previous conviction for possession of marijuana. The court also stated the same reasons he gave for Price's sentencing apply to Trosclair. However, the court further stated that during the trial evidence was brought out that Trosclair was the person who beat the victim with the bat. The court felt there would certainly be a risk that if Trosclair's sentence was suspended he would commit another crime. The court stated Trosclair was in need of a custodial environment, and a lesser sentence would deprecate the seriousness of the crime. The court also stated that what Trosclair had done was simply his own fault because he did not have a conscience. Considering the above, we find the trial court adequately complied with the article 894.1 guidelines in sentencing both Price and Trosclair.
We do not find the sentences in this case to be excessive. For his conviction of *943 armed robbery, Price was exposed to a sentence of imprisonment at hard labor for not less than five years and for not more than 99 years without benefit of parole, probation, or suspension of sentence. See LSA-R.S. 14:64(B). However, Price was adjudicated a second felony habitual offender which increased his exposure to a minimum sentence of 49-½ years and a maximum sentence of 198 years at hard labor. See LSA-R.S. 14:64(B) and LSA-R.S. 15:529.1(A)(1). Thus, his sentence of 99 years at hard labor without benefit of parole, probation, or suspension of sentence is within the range of possible sentences and does not appear to be grossly disproportionate to the offense committed.
For his conviction of armed robbery, Trosclair was exposed to a sentence of imprisonment at hard labor for not less than five years and for not more than 99 years without benefit of parole, probation, or suspension of sentence. See LSA-R.S. 14:64(B). Trosclair's sentence of 65 years at hard labor without benefit of parole, probation, or suspension of sentence was within the range of possible sentences and does not appear to be grossly disproportionate to the offense committed.
According to the record, the victim was beaten badly, and the injuries he sustained from the beating required surgery to correct. The victim continued to suffer from memory loss as a result of the head injuries sustained in the beating. Under these circumstances, we find no abuse of discretion in the sentences imposed. Thus, we find this assignment of error to be without merit.

ASSIGNMENT OF ERROR NUMBER ELEVEN (PRICE):
Individually, Price contends the trial court erred in finding him to be a habitual offender. He argues the court stated he was a multiple offender rather than a habitual offender, and the court did not articulate he was a second offender.
A bill of information was filed charging Price as a second felony habitual offender. After a hearing by the trial court, Price was determined to be a second felony habitual offender. The trial court stated, "This Court finds he is a multiple offender with regard to the simple burglary, and the matter before us that he was convicted for recently."
Price argues that according to State v. Jones, 516 So.2d 396, 402 (La.App. 5th Cir. 1987), the court must articulate that he was a second felony habitual offender. The defendant in Jones was originally charged as a third felony offender; however, the defendant was adjudicated to be a habitual offender. In Jones the appellate court noted there was no determination as to whether the defendant was a second or third offender. Thus, the case was remanded for clarification.
In this case, there is no need for clarification. Price was charged as a second felony habitual offender and was adjudicated by the trial court to be a multiple offender. The only options for the court were to find Price to be a second felony offender or not to be a habitual offender. There is no confusion as Price was charged as a second felony habitual offender, and he was found guilty as charged. This fact distinguishes this case from Jones, where the defendant could have been adjudicated either a second or third felony offender and it was unclear as to his adjudication.
Additionally, in this assignment of error Price sets forth an argument pertaining to his sentencing that the trial court failed to articulate any mitigating circumstances and did not adequately consider the guidelines. This argument should have been raised in assignment of error number ten. Price's sentence and the reasons for his sentence were discussed in the previous assignment. Thus, we will not address it under this assignment. This assignment of error is without merit.

PATENT ERROR:
Under the authority of Louisiana Code of Criminal Procedure article 920(2), this court routinely reviews appellate records for patent error. After reviewing the record, we have discovered patent sentencing errors. The trial court failed to give defendants credit for time served. See La.C.Cr.P. art. 880. Accordingly, we amend the sentences to reflect defendants are to be given credit for time served prior to the execution *944 of their sentences. See State v. Greer, 572 So.2d 1166, 1172 (La.App. 1st Cir.1990). Resentencing is not required; however, we remand this case and order the trial court to amend the commitments, if necessary, and the minute entries of the sentencing to reflect defendants are to be given credit for time served.
Additionally, in sentencing Price the trial court stated his sentence was to be served "without benefit of parole, probation, suspension or commutation of sentence." It is unclear as to which type of commutation of sentence the trial court was referring. If it was referring to commutation, or "good time", as referred to in Revised Statute 15:571.3, then Price's sentence would not be in error as it would fall under Revised Statute 15:571.3(C)(1)(k), (2), and (3)(b). Price was convicted of armed robbery and sentenced as a habitual offender. His last conviction for purposes of the habitual offender law was committed on or after September 10, 1977. Assuming the trial court was referring to this type of commutation, there is no error as Price was not eligible for "good time."
However, if the trial court meant to deny commutation of sentence under Revised Statute 15:572, the court does not have this power. The trial court's denial of pardon or commutation of sentence was wrong and unnecessary. According to Revised Statute 15:572, the governor grants pardons and commutes sentences. This is a power of the executive branch of the State of Louisiana and not the judicial branch. La. Const. Art. 4, § 5(E)(1). Thus, if the trial court meant to impose this type of condition, the condition of the sentence would be illegal and invalid. State v. Cortina, 632 So.2d 335 (La.App. 1st Cir.1993). Accordingly, this possible condition of Price's sentence is hereby vacated as such a condition is illegal and invalid; however, the remainder of Price's sentence which orders him to serve 99 years at hard labor without benefit of parole, probation, or suspension of sentence remains valid.
CONVICTIONS AFFIRMED; SENTENCES AFFIRMED AS AMENDED; CASE REMANDED WITH ORDER.
NOTES
[1] Defendants asserted eleven assignments of error but expressly abandoned two of them, numbers six and seven.
[2] Both defendants' briefs refer to the potential juror as a female named Leslie Lapeyrouse. However, after reading the record and specifically the pages they refer to in their briefs, we have determined the potential juror they are referring to is a male named Lester Lapeyrouse. At one point the court does refer to him as Leslie, but when he gave information about himself he stated his name as Lester. There was also a potential juror who was a female named Melinda Lapeyrouse; however, she does not make any statements during voir dire that her uncle is Ronald Bergeron. Therefore, because of the references given by defendants to the questions to Lester Lapeyrouse, we have assumed they were referring to him.
[3] Arguably, Ellery Nelton's testimony that the victim told him it was the "girlfriend's boyfriend" who hit him was not hearsay testimony under Louisiana Code of Evidence article 801(D)(1)(c). This article states a statement is not hearsay if the declarant testifies at trial and is subject to cross-examination concerning the statement, and the statement is:

[o]ne of identification of a person made after perceiving him, and which confirms the testimony of the declarant that he had made an identification, except that in cases of amnesia resulting from physical injury from the criminal act, any other person may testify to an out of court identification....
Here, the declarant (the victim) did testify at trial as to the identity of the assailant, he was subject to cross-examination, and the testimony was a statement of identification. See State v. Baker, 582 So.2d 1320, 1330-31 (La.App. 4th Cir.1991), writ denied, 590 So.2d 1197 (La.), cert. denied, ___ U.S. ___, 113 S.Ct. 62, 121 L.Ed.2d 30 (1992).
[4] Code of Criminal Procedure article 894.1 was amended by 1991 La. Acts., No. 22, § 1, effective January 31, 1992.