545 So.2d 981 (1989)
STATE of Louisiana
v.
Kerry MYERS and William Fontanille.
No. 89-KK-0030.
Supreme Court of Louisiana.
June 19, 1989.
William J. Guste, Jr., Atty. Gen., John M. Mamoulides, Dist. Atty., Terry M. Boudreaux, Dorothy Pendergast, Asst. Dist. Attys., for plaintiff-appellant.
Nick F. Noriea, Jr., Madeleine M. Landrieu, Kierr, Gainsburgh, Benjamin, Fallon, *982 David & Ates, New Orleans, Wiley Beevers, Metairie, for defendants-appellees.
DIXON, Chief Justice.
Defendants Kerry Myers and William Fontanille are charged with conspiracy to commit second degree murder and second degree murder of Janet Myers. Previously, Fontanille was arrested and charged with first degree murder. His trial was held in October and November of 1986, resulting in a hung jury, with six jurors voting to acquit and six voting to convict. Following the mistrial, the case was again submitted to a grand jury and both defendants were indicted. Defendants filed pretrial motions to have the state lay the predicate for its introduction of certain statements made by the defendants, before using them at trial. After a hearing on the matter, the trial court ruled that the statements were inadmissible since the state failed to present a prima facie case of conspiracy. The state applied for writs in the Fifth Circuit Court of Appeal, which were denied. State v. Myers and Fontanille, No. 88-K-778 (La.App. 5th Cir. 10/28/88). We granted writs, State v. Myers and Fontanille, 537 So.2d 1156 (La. 1989), and now affirm the trial court's ruling.
The scant record before this court reveals the following events. In the early morning hours of February 24, 1984, William Fontanille entered the Jo Ellen Smith Hospital with numerous stab wounds. He was questioned by John Taylor, a police officer with the New Orleans Police Department, about the wounds. Fontanille explained that he had gone to the home of Kerry and Janet Myers at about 4:00 p.m. on February 23, 1984 to retrieve a baseball bat he had left there on the previous day. Fontanille claims that Kerry Myers let him in the door and attacked him with a knife and stabbed him several times. The two men fought intermittently for the next nine and one-half hours, pausing occasionally to watch television. He stated that Myers kept him at bay with the knife and later the baseball bat, and would not allow him to call an ambulance to treat him for his wounds. He contends that at one point, Myers gave in and stated that he would call an ambulance. Myers went into the kitchen to place the call. After several hours when the ambulance did not come, it became apparent that Myers had not actually made the call. Later, Myers gave permission for Fontanille to go to the bathroom, but while walking down the hall Myers attacked him from behind; they wrestled for several hours, with neither person being able to gain control of the knife. Fontanille claims that eventually Myers' grip on the knife loosened and he was able to flee from the house.
On March 15, 1984, with the assistance of counsel, Myers related a similar story to Sergeant Robert Masson. In his statement, he contends that it was Fontanille who attacked him when he arrived home from work. He stated that when he entered the door of his house, Fontanille was already inside and attacked him with the baseball bat. He fended off one of the blows with his arm, which was broken by the impact. He told a similar story of how the two fought, also stating that the two would suspend the fight to watch television and discuss their respective domestic problems. He stated that he heard the moans of his wife and the cries of his children, but was unable to check their condition because Fontanille was armed with the bat and the knife. When Fontanille decided to use the bathroom, Myers claims that he was ordered to lead the way down the hall, and Fontanille attacked him from behind. He further related that the two wrestled each other to the floor, where they remained for several hours until Fontanille's grip on the knife loosened and he was able to chase him out of the house. He immediately called the police and grabbed a shotgun to protect himself in the event Fontanille returned. He later checked on his wife and found her beaten and stabbed body in the living room.
At the first trial of Fontanille for first degree murder, Kerry Myers was the chief witness for the state, testifying to his version of the events surrounding the murder. Fontanille testified on his own behalf relating his version of the incident. After the *983 mistrial, the state again submitted the case to the grand jury which returned the present indictments. The state made known to the defendants its intention to use the statements, both oral and recorded, made by them to law enforcement officials. The defendants then filed the motion to have the state lay the predicate for the introduction of coconspirators' statements. The state attempted to make out a prima facie case of conspiracy as required by R.S. 15:455.[1] The only evidence by the state at this hearing was the testimony of Officer John Taylor, Sergeant Robert Masson, and Deputy Noel Adams. Their testimony consisted of the contents of the oral and recorded statements made by the two defendants. The trial court considered the statements that are the subject of these proceedings and found that the state had failed to present a prima facie case of conspiracy. As a result, the trial court ruled that the statements were not admissible in the trial for conspiracy.
Initially, the state contends that the trial court erred in finding insufficient evidence to sustain a prima facie case of conspiracy. The first witness called by the state at the hearing was Officer Taylor. He testified that he was on duty at Jo Ellen Smith Hospital on the morning of February 24, 1984 when Fontanille entered the hospital. He explained that Fontanille, as well as his clothes, was bloody.[2] Taylor approached Fontanille and questioned him about his condition and how he was injured. The officer did not advise Fontanille of his Miranda rights. Fontanille then related his version of the events surroundiug the murder of Janet Myers. He stated that Kerry Myers had told him (Fontanille) that he was going to blame the murder on him when he (Myers) called the police. When Fontanille told Taylor of the possibility of two murder victims, he contacted the Jefferson Parish Sheriff's Office, which dispatched Deputy Noel Adams to the hospital. Adams advised Fontanille of his rights and further questioned Fontanille about the incident. Taylor was not a party to this conversation, but did overhear parts of it. He stated that the story told by Fontanille to Adams was essentially the same as the one told to him by Fontanille.
Next, the state presented the testimony of Officer Robert Masson. He was the officer who took the taped statements from Myers and Fontanille. Prior to his testimony, the statements of Myers and Fontanille were played before the court. Masson simply testified that to the best of his knowledge the tapes were an accurate reflection of the statements made by the two defendants to him.
Finally, the state called Noel Adams to testify concerning his conversation with Fontanille at the hospital. Adams relayed the substance of his interrogation of Fontanille, which was essentially the same story he has maintained throughout these proceedings. He stated that Fontanille told him of Myers' plan to tell the police that the two defendants sat in the house and planned to kill each other's wives. On cross-examination, Adams admitted that Fontanille did not state that there was a *984 conspiracy or agreement between the two, but Fontanille was merely relaying what Myers had allegedly told him during the fight.
With this presentation, the state submitted the matter, whereupon the trial court ruled that the state had failed to prove a prima facie case of conspiracy. It is the state's contention that the above testimony and the statements of the defendants were sufficient to prove a prima facie case of conspiracy, and the trial court abused its discretion in not making such a ruling.
R.S. 14:26 provides in part:
"Criminal conspiracy is the agreement or combination of two or more persons for the specific purpose of committing any crime, provided that an agreement or combination to commit a crime shall not amount to a criminal conspiracy unless, in addition to such agreement or combination, one or more of such parties does an act in furtherance of the object of the agreement or combination."
At the hearing, the only evidence remotely tending to prove a conspiracy was the statement given by Fontanille to the police at the hospital wherein he stated that Myers was planning to tell the police that he and Fontanille had planned to kill each other's wives. Conceding that this is the only evidence actually presented at the hearing concerning a conspiracy, the state asks this court to find an abuse of discretion in the trial court's failure to draw certain inferences from the bizarre stories related by both defendants. The state contends that the statements by Fontanille to Adams and Taylor were ostensibly made by Fontanille to place the blame on Myers, but were actually evidence of a conspiracy gone awry. The state argues that there would be no other reason for Fontanille to have even mentioned the alleged plan of Myers to place the blame on him. The trial court correctly ruled that these statements do not present a prima facie case of conspiracy.
Additionally, the state has argued that under the new Code of Evidence, the statements should be admitted. Both the defense and the state have briefed and argued the applicability of the new Code of Evidence. Section 12 of Acts 1988, No. 515 provides:
"(2) Furthermore, it shall govern and regulate all hearings, trials or retrials, and other proceedings to which it is applicable which are commenced on or after the effective date of this Act, except to the extent that its application in a particular action pending when the Act takes effect would not be feasible or would work injustice, in which event former evidentiary rules apply."
Since this trial will be held after the effective date of the new Code of Evidence, January 1, 1989, the new rules of evidence will apply.
Applying the new Code of Evidence, the ruling of the trial court is also correct. Arguably, the new code allows the trial court to consider the hearsay statements themselves in determining the presence of a prima facie case of conspiracy. As mentioned earlier, these statements of the defendants were practically the only evidence presented at the hearing. The new code has changed the character of statements of coconspirators to make them nonhearsay, while the old jurisprudence considered them exceptions to the hearsay rule. However, the new code has retained the requirement that the state present a prima facie case of conspiracy before the statements will be admissible. C.E. art. 801(D)(3)(b) provides:
"D. A statement is not hearsay if:
(3) The statement is offered against a party, and the statement is:
(b) A statement by a declarant while participating in a conspiracy to commit a crime or civil wrong and in furtherance of the objective of the conspiracy, provided that a prima facie case of conspiracy has been established."
The new Code of Evidence retains the requirements that the statement be made in furtherance of the conspiracy, and that the state make a prima facie showing of conspiracy before the statement can be admitted. The issue raised in this case was left unanswered by the United States Supreme *985 Court in the case of Bourjaily v. United States, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987), where the Court held that it was not a violation of the defendant's Sixth Amendment right to confront his accusers if the trial court considered the hearsay declaration in determining if the prosecution had proved a prima facie case of conspiracy. The Court did not reach the issue of whether the statement itself, without any other independent proof of conspiracy, could be used to provide the prima facie case. The Louisiana legislature has aparently adopted the view expressed in Bourjaily. The new Code of Evidence allows the trial court to consider the hearsay statements when determining preliminary matters, such as the existence of a prima facie case. C.E. art. 104(A) and comment (d). In the present case, the statements of both defendants were introduced into evidence at the hearing. Despite the presence of these statements, the trial court found no prima facie case of conspiracy.
The state also presents other inconsistencies in the statements of Myers and Fontanille and asks this court to draw certain "inferences" from these inconsistencies. The element missing from all of the state's evidence and inferences therefrom is any evidence of a conspiracy. The state presented no evidence at the hearing to corroborate a finding of conspiracy. There is no physical evidence retrieved from the crime scene in the record. While arguing in its brief that one of the defendants must have heard the cries and moans of Janet Myers, the record contains no diagrams or pictures of the Myers residence to show the location of the body or the places where the defendants claim the fight took place. There was no testimony from any of the neighbors or investigators to establish that a fight took place between the defendants. While the state makes a credible argument that one of the defendants or both of them were involved in the murder, it presented no evidence to prove this fact, aside from the hearsay statements. As pointed out by the defense counsel, the state is apparently planning to put both of the defendants before a jury and let them decide who committed the murder, or if they conspired to kill Janet Myers.
As the record now stands before this court, the trial court correctly ruled that the state failed to present a prima facie case of conspiracy. Therefore, the statements of the defendants are inadmissible in the trial for conspiracy. The ruling of the trial court is affirmed.
NOTES
[1] R.S. 15:455 now provides:

"Each coconspirator is deemed to assent to or to commend whatever is said or done in furtherance of the common enterprise, and it is therefore of no moment that such act was done or such declaration was made out of the presence of the conspirator sought to be bound thereby, or whether the conspirator doing such act or making such declaration be or be not on trial with his codefendant. Such evidence is controlled by the provisions of the Louisiana Code of Evidence."
Prior to January 1, 1989, and at the time of the hearing, R.S. 15:455 stated:
"Each conconspirator is deemed to assent to or to commend whatever is said or done in furtherance of the common enterprise, and it is therefore of no moment that such act was done or such declaration was made out of the presence of the conspirator sought to be bound thereby, or whether the conspirator doing such act or making such declaration be or be not on trial with his codefendant. But to have this effect a prima facie case of conspiracy must have been established."
[2] While Taylor testified that Fontanille's clothes were confiscated, there is no indication in the record of any tests being made upon these clothes to determine whose blood was on them. While the state has indicated that it is in possession of other evidence indicating a conspiracy, this "evidence" is not in the record and cannot be considered in the resolution of this case.