572 So.2d 262 (1990)
STATE of Louisiana
v.
Joe ELLISON (Two Cases).
Nos. 90 KA 0074, 90 KA 0075.
Court of Appeal of Louisiana, First Circuit.
November 14, 1990.
Writ Denied February 22, 1991.
*264 William J. Burris, Asst. Dist. Atty., Franklinton, Bill Campbell, New Orleans, for plaintiff-appellee State of La.
Sam Collett, Bogalusa, for defendant-appellant Joe Ellison.
Before LOTTINGER, SHORTESS and CARTER, JJ.
CARTER, Judge.
Joe Ellison was indicted for distribution of cocaine, a violation of LSA-R.S. 40:967 A. Defendant pled not guilty and, after a trial by jury, was found guilty of attempted distribution of cocaine. Thereafter, the state filed a multiple offender bill pursuant to LSA-R.S. 15:529.1, and the allegations therein were admitted by defendant at the hearing thereon. The trial court then sentenced defendant, as a second felony offender, to serve 20 years at hard labor without benefit of probation or suspension of sentence. Defendant appeals[1] urging the following assignments of error:
(1) The verdict is contrary to the law and evidence presented at trial in light of the circumstantial nature of all evidence by the State of Louisiana.
(2) The court erred in allowing hearsay testimony of an indicted co-defendant, through the state's only witness at trial, which testimony was critical to the state's establishment of guilt, and without further requiring the presence of the co-defendant to testify.
(3) The court erred in not granting a mistrial and/or jury admonition when the state's narcotics agent testified that defendant was a known drug dealer in this area, thus directly indicating evidence of other supposed crimes of defendant.
(4) The sentence imposed by the Honorable District Court, France Watts, III presiding, is excessive and represents cruel and unusual punishment in violation of the State and Federal Constitutions.

FACTS
Narcotics agent Allen Pohlman of the Picayune Police Department testified that he had been assigned to work with the Bogalusa Police Department in an undercover narcotics operation. He stated that, at approximately 4:00 p.m. on August 4, 1988, he was traveling north on Second Avenue in Bogalusa, Louisiana, when a black male (later identified as co-defendant Carey Williams) flagged him down near the corner of Deloraine and Second Avenue. Pohlman indicated that the man then approached and entered his vehicle and asked Pohlman if he would like to purchase cocaine. The officer stated that he and the black male rode around the block in the officer's vehicle. When the vehicle returned to the corner of Second Avenue and Deloraine, the black male exited it and approached defendant, who was standing directly across Second Avenue. When the man reached defendant, they walked together approximately one-half of a block, and defendant handed the black male a small object. The black male then went back to Pohlman and entered his vehicle. He produced a clear plastic bag containing a white powdery substance which he represented to Pohlman as cocaine. He informed Pohlman that the price for the substance was $20. Pohlman handed the black male a $20 bill. The man then exited Pohlman's vehicle, went back to defendant, who had resumed his stance on Second Avenue, and handed defendant the $20 bill. Pohlman testified that both defendant and his cohort (the black male) were within his view throughout the entire transaction.
Pohlman further testified that he gave the packet of white powdery substance to Captain Dorman Pritchard of the Bogalusa City Police Department shortly after the transaction had been consummated. Pohlman also gave Pritchard a physical description of defendant, and Pritchard then instructed Pohlman to identify defendant from a photographic array of approximately thirty black males. Pohlman did so, and *265 defendant was arrested on September 23, 1988.
Pritchard also testified at trial. He indicated that he received the clear plastic bag which contained the white powdery substance from Pohlman and that he sent the evidence to the State Police Crime Lab in Baton Rouge, Louisiana. Further, the Certificate of Analysis prepared by the forensic scientist from the State Police Crime Lab was introduced into evidence.

HEARSAY STATEMENTS OF CO-DEFENDANT
In his second assignment of error, defendant asserts that the trial court erred in allowing a state witness to testify concerning alleged hearsay statements made by the co-defendant, without requiring the co-defendant to testify. In his brief to this court, defendant notes that Carey Williams, the indicted co-defendant, was housed as an inmate in the parish jail across the street from the courthouse. He submits that the state was allowed to introduce "accusatory" statements made by Williams without calling Williams to the stand, which would have given defendant an opportunity to cross-examine him. Finally, defendant argues that the improper admission of the prejudicial hearsay statements was not harmless beyond a reasonable doubt.
"Hearsay" is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. LSA-C.E. art. 801 C. See State v. Martin, 356 So.2d 1370 (La.1978); State v. Cutrera, 558 So.2d 611 (La.App. 1st Cir. 1990). A "statement" includes nonverbal conduct of a person, if it is intended by him as an assertion. LSA-C.E. art. 801A(2). Comment (c) to article 801A indicates that "non-assertive conduct" wherein no message is intended is not considered hearsay.
Although defendant argues in his brief to this court that the trial court erred in allowing into evidence his co-defendant's hearsay statements, he fails to note that the trial court required the state to lay a foundation as to Pohlman's testimony concerning a statement made by the co-defendant to the agent. Also, defendant does not specifically explain which statements, if any, were made by the co-defendant. In his brief to this court, defendant merely reiterates the trial testimony of Pohlman concerning the agent's eyewitness account of the co-defendant's and defendant's actions. We do not believe that the co-defendant's actions as described by Pohlman at trial constituted a "statement" as that term is defined in LSA-C.E. art. 801A(2). Therefore, we find defendant's assertion that Pohlman's testimony included hearsay statements made by the co-defendant is without merit.

MOTION FOR MISTRIAL DUE TO ALLEGED OTHER CRIMES EVIDENCE
By way of his third assignment of error, defendant avers that the trial court erred in denying his motion for a mistrial and/or admonishment to the jury when Pohlman testified that defendant was a known drug dealer in the area, which allegedly constituted direct evidence of other crimes committed by defendant. In his brief to this court, defendant argues that, since Pohlman was an experienced police officer, close scrutiny should be given to his allegedly prejudicial statement. He further asserts that, because the state did not provide him with notice that it intended to introduce evidence of other crimes, the statement made by Pohlman was inadmissible. Finally, he submits that, at the very least, the trial court should have admonished the jury to disregard Pohlman's statement.
LSA-C.Cr.P. art. 770 provides, in pertinent part:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
....
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;

*266 ....
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
A police officer is not a court official within the meaning of LSA-C.Cr.P. art. 770. State v. Watson, 449 So.2d 1321 (La. 1984), cert. denied, 469 U.S. 1181, 105 S.Ct. 939, 83 L.Ed.2d 952 (1985). Instead, the applicable provisions are contained in LSA-C.Cr.P. art. 771, which provides, in pertinent part, as follows:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
....
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
Herein, the reference to alleged other crimes evidence occurred while the state's primary witness was under cross-examination by defense counsel. The following colloquy occurred:
Q. How do you know that Carey Williams didn't have the drugs on him to start with?
A. Because every time I purchased cocaine from him, he would go to someone else to get it, and he informed me that the defendant was the main supplier of cocaine in the area.
The jurisprudence interpreting LSA-C.Cr.P. art. 771(2) has held that unsolicited and unresponsive testimony is not chargeable against the state to provide a ground for mandatory reversal of a conviction. State v. Jack, 554 So.2d 1292 (La. App. 1st Cir.1989), writ denied, 560 So.2d 20 (La.1990). In the instant case, we cannot find that the reference to alleged other crimes evidence was deliberately obtained by design of the prosecutor to prejudice the rights of defendant. Consequently, LSA-C.Cr.P. art. 771(2) does not mandate a mistrial herein. See State v. Jack, 554 So.2d at 1296. Further, the trial court's failure to instruct the jury to disregard the remark referring to other crimes allegedly committed by defendant, absent a request, was not, in itself, reversible error. State v. Jack, 554 So.2d at 1296.
For these reasons, this assignment of error is without merit.

SUFFICIENCY OF THE EVIDENCE
In his first assignment of error, defendant avers that the verdict was contrary to the law and evidence presented at trial in light of the circumstantial nature of the evidence presented by the state. We take this assertion to be a challenge to the sufficiency of the evidence and note that defendant should have proceeded by way of a motion for post verdict judgment of acquittal. See LSA-C.Cr.P. art. 821. Nevertheless, we will consider this claim, which is briefed pursuant to a formal assignment of error. See State v. Jones, 496 So.2d 638 (La.App. 1st Cir.1986).
Defendant asserts in his brief to this court that, but for the testimony of Pohlman that the co-defendant told him that he purchased the drugs from defendant, the evidence herein is very weak and purely circumstantial.
The constitutional standard for testing the sufficiency of the evidence, enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing *267 the evidence in the light most favorable to the prosecution, to find the essential elements of the crime charged beyond a reasonable doubt. State v. Payne, 540 So.2d 520 (La.App. 1st Cir.), writ denied, 546 So.2d 169 (La.1989). This standard is codified in LSA-C.Cr.P. art. 821.
In order for the state to prove defendant was guilty of the crime of attempted distribution of cocaine, it must show that defendant had a specific intent to knowingly distribute cocaine and that defendant committed an act for the purpose of and tending directly toward the accomplishing of that object. See LSA-R.S. 14:27 and LSA-R.S. 40:967A(1).
Herein, the trier of fact heard the testimony of several state witnesses and viewed the state's evidence. Pohlman described his role as an undercover narcotics agent and also testified to the details of the crime herein. Also, the jury saw unrebutted evidence indicating that the substance given by the defendant to Carey Williams was in fact cocaine.
First, the defendant's assertion that the co-defendant, Carey Williams, should have been searched before he approached defendant flies directly in the face of the nature of an undercover operation. Also, defendant's argument that the evidence at trial was purely circumstantial pales when compared to Pohlman's unrebutted testimony that he witnessed a drug transaction take place between defendant and Carey Williams.
Viewing the evidence in the light most favorable to the prosecution, we find that any rational trier of fact could have concluded beyond a reasonable doubt that the state proved all of the elements of attempted distribution of cocaine and that the defendant was guilty of that offense. Accordingly, this assignment of error lacks merit.

PATENT SENTENCING ERROR
We note, ex proprio motu, an error patent on the face of the record which requires that the sentence imposed herein be vacated and that the case be remanded to the trial court for resentencing. Therefore, we do not address assignment of error number four.
Defendant was sentenced as a multiple offender to twenty years at hard labor without benefit of probation or suspension of sentence. However, defendant should have been sentenced under the statutes in effect on the date of the commission of the crime.[2]
On that date, LSA-R.S. 40:967B stated that:
Except as provided in Subsection F hereof, any person who violates Subsection A with respect to:
....
(3) Any other controlled dangerous substance classified in Schedule II [of which cocaine was classified] except pentazocine shall be sentenced to a term of imprisonment at hard labor for not more than ten years; and, in addition, may be sentenced to pay a fine of not more than fifteen thousand dollars.
Also, LSA-R.S. 40:979A provided as follows:
Except as otherwise provided herein, any person who attempts or conspires to commit any offense denounced and or made unlawful by the provisions of this Part shall, upon conviction, be fined or imprisoned in the same manner as for the offense planned or attempted, but such fine or imprisonment shall not exceed one-half of the punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.
Finally, on that date, LSA-R.S. 15:529.1 provided, in pertinent part, as follows:
A. Any person who, after having been convicted within this state of a felony, *268 or who, after having been convicted under the laws of any other state or of the United States, or any foreign government or country of a crime which, if committed in this state would be a felony, thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:
(1) If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-third the longest term and not more than twice the longest term prescribed for a first conviction;
....
G. Any sentence imposed under the provisions of this Section shall be without benefit of probation or suspension of sentence.
As a habitual offender whose second felony conviction was for attempted distribution of cocaine which occurred on August 4, 1988, defendant's sentencing exposure was imprisonment for a minimum of one year and eight months at hard labor and a maximum of ten years at hard labor and possible fine of not more than $7,500. The sentence imposed herein exceeded the penalty provisions of the statutes set out above. It was illegal for the trial court to sentence defendant to a term of imprisonment of more than ten years at hard labor without benefit of probation or suspension of sentence. Accordingly, this case must be remanded to the trial court for resentencing in accordance with the penalty options in effect on August 4, 1988. LSA-C. Cr.P. arts. 882 and 920(2).
For the above reasons, we affirm defendant's conviction, but vacate the sentence and remand the case for resentencing in accordance with the law as expressed herein.
CONVICTION AFFIRMED; SENTENCE VACATED AND REMANDED FOR RESENTENCING.
SHORTESS, J., concurs with reasons.
SHORTESS, Judge, concurring.
I agree with the result reached by the majority with regard to assignment of error number 1. However, I disagree with the majority's reliance on LSA-C.E. art. 801(A)(2) to resolve the issue. The record contains numerous verbal statements intended as assertions.[1] These statements, if believed, would help prove that the cocaine came from defendant. Respectfully, I submit that LSA-C.E. arts. 801(D)(3)(b) and 801(D)(4) are more appropriate articles to rely on under the circumstances.
Under LSA-C.E. art. 801(D)(3)(b), a "statement is not hearsay if offered against a party, and the statement is [a] statement by a declarant while participating in a conspiracy to commit a crime ... and in furtherance of the objective of the conspiracy, provided that a prima facie case of conspiracy has been established...." At trial, the trial court ordered the state to lay a foundation before the majority of the contested statements were allowed into evidence. The foundation consisted of the eyewitness testimony of Agent Pohlman who testified that he saw the defendant hand Carey Williams something. Agent Pohlman further stated that Williams walked directly back to him with Williams' hand closed and in sight the whole time, and that Williams handed Pohlman what later analysis proved to be cocaine. This testimony alone, if unrebutted, sufficiently established a prima facie case existed. Moreover, the trial court could have considered the statements questioned by defendant on appeal in making its determinations as to whether the state carried its burden of proving a prima facie case existed. LSA-C.E. art. 104(A); and State v. Myers, 545 So.2d 981 (La.1989). The trial *269 court heard the predicate evidence in the presence of the jury. Clearly, the better practice would be for the trial judge to first hear the predicate evidence outside the presence of the jury. LSA-C.E. art. 104(C) and author's note 4; State v. Myers, 545 So.2d at 985; and State v. Davis, 430 So.2d 680 (La.App. 2d Cir.1983). However, under the circumstances presented, the defendant was not prejudiced by the trial court's actions because the jury eventually would have heard the evidence.
The statements are also admissible under LSA-C.E. art. 801(4) which provides that "[a] statement is not hearsay if ... the statements ... are necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction."
In State v. Millet, 356 So.2d 1380 (La. 1978),[2] which is a remarkably similar case, the supreme court held that the trial court committed reversible error by allowing a police officer to testify that a co-defendant, not testifying at trial, told him they would have to "go see Randy" apparently to get the drugs. Because the state had not shown with independant plausible evidence that a crime had occurred, which was a necessary prerequisite to the employment of the res gestae exception to the hearsay rule, the court ruled the statement to be inadmissible. However, the court stated that had the officer seen a transfer of money or drugs the statement might well have been admissible as part of the res gestae. Here, we have the eyewitness testimony of agent Pohlman who saw money and drugs change hands. Therefore, independant plausible evidence existed that a crime had occurred.
Accordingly, I respectfully concur.
NOTES
[1] Carey Williams, the co-defendant herein, was charged along with defendant; however, he is not a party to the instant appeal.
[2] Retrospective application of an enhanced sentence is prohibited by Louisiana and United States constitutional provisions prohibiting ex post facto laws. U.S.C.A. Const. Art. 1, § 9, cl. 3; LSA-Const. Art. 1, § 23. The prohibition extends to the enforcement of any enactment which changes the punishment to inflict greater penalty than that authorized for the crime at the time of its commission. See State v. Bethley, 452 So.2d 367 (La.App. 1st Cir.1984).
[1] During trial, agent Pohlman testified that:

[Williams] produced a clear plastic bag that he presented as cocaine.... He informed me that the price was $20.00 ... he asked me if I'd like to purchase some cocaine ... he told me to make the block.... He said he was going to go pick the cocaine up, come back to me, I would pay him, and he would go back and give the money to who he named as Blue Joe, which was the defendant's street name.
[2] Millet examined old article LSA-R.S. 15:447-448. However, the language of LSA-C.E. 801(D)(4) substantially reproduces these now repealed statutes.