607 So.2d 828 (1992)
STATE of Louisiana
v.
Ralph D. JONES.
No. KA 91 1468.
Court of Appeal of Louisiana, First Circuit.
October 16, 1992.
Writ Denied February 5, 1993.
*829 William R. Campbell, Jr., New Orleans, for State of La.
David J. Knight, Asst. Dist. Atty., Covington, for appellee.
James H. Looney, Office of Indigent Defender, Covington, for appellant.
Before CARTER, LANIER and LeBLANC, JJ.
LANIER, Judge.
Ralph D. Jones was charged by grand jury indictment with first degree murder, a violation of La.R.S. 14:30. He entered a plea of not guilty. After his trial, the jury found him guilty as charged. The trial court sentenced the defendant to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. This appeal followed.

FACTS
On January 22, 1989, the body of Marshall E. Bracey was discovered in the bed of his pickup truck. The truck was parked beside the Night Owl Lounge in Slidell, Louisiana. The victim had two gunshot wounds to his head and ten stab wounds on his neck.
Detective David Hathorne of the St. Tammany Parish Sheriff's Office testified *830 that on March 22, 1990, he received information from a prisoner in Mississippi that caused him to question the defendant about the murder. The defendant was advised of his Miranda rights. A videotaped statement was taken in which the defendant confessed to being a participant in the murder of Bracey. The defendant stated that he, Dale Roy Creel, the victim's step-son, and Laura Mae Bracey, the victim's wife, planned to kill Bracey. The defendant said that Mrs. Bracey would pay Creel $4,000.00 for killing her husband. This money would come from life insurance and company benefits payable upon the victim's death. Creel offered to pay the defendant $2,000.00 for his help.
The defendant said that on January 20, 1989, Creel shot and stabbed the victim while the defendant waited to pick up Creel in Mrs. Bracey's car. He stated that when he saw Creel, the victim lay in the back of the pickup truck and appeared dead. He added that Creel shot the victim in the head again because he was unsure that Bracey was dead. Then he and Creel left the body in the bed of the pickup truck parked at the lounge.

DENIAL OF MISTRIAL

(Assignment of error number 1)
Defendant claims that the trial court erred by denying his motion for a mistrial. He asserts (1) no notice was given of the inculpatory oral statement that referred to another crime, (2) Police Officer David Hall's statement referring to the possibility of another murder required a mistrial, and (3) the State violated the discovery rules by failing to disclose this statement to the defendant.
In its case-in-chief the State asked Officer Hall to identify the first of many photographs. Officer Hall chose to describe first a photograph labeled number seven of State Exhibit 17. When identifying this picture, he stated the following:
Photograph No. 7 is a photograph of the Sunrise Sunset. It's a convenience store and gas station located right outside of Bogalusa off of LA 21. Mr. Jones had told us after the statements were taken, it was something that he had forgotten, that Dale Roy and Mr. Bracey had stopped there on the way to Slidell from Bogalusa before Mr. Bracey was murdered to pick up some beer. Dale Roy had told Mr. Jones that they may have to kill the man if they [sic] saw them in the store, because the man saw them together at a time after they had already told us [the police] that he hadn't been with the man. At that time he was at Phillip's Lounge.
The defense immediately objected and moved for a mistrial. The prosecutor admitted that he did not give notice of the statement to the defendant. The prosecutor maintained that he did not intend to introduce the statement at trial and was under no duty to reveal it. He further stated that he "had no idea" that Officer Hall was going to give the statement.

Notice
The notice provisions of La.C.Cr.P. art. 716(C) require that upon motion, the district attorney must provide notice of the substance of any of the defendant's oral statements to law enforcement officers that the state intends to use at trial. The defense contends that the submission of the picture and asking the witness to describe a photograph of a place that appears to have no relevance to the case other than the questioned statement, suggests that the prosecutor got the answer he wanted, and this prejudiced the defendant. However, the trial judge apparently was satisfied that the State did not deliberately seek to obtain this testimony, and, thus, was not responsible for it.
Although the defendant contends that the statement was inadmissible because no notice was given, the notice provisions of La.C.Cr.P. art. 716 apply only when the State intends to introduce the defendant's statements at trial. The prosecutor testified that he was unaware that the police officer would give this answer. The trial court ruled that the State's explanation was credible. Accordingly, the State was not required to provide notice of *831 the statement or its contents. State v. Johnson, 553 So.2d 865 (La.App. 1st Cir. 1989), writ denied, 558 So.2d 600 (La.1990).

Other Crimes Evidence
The statement by Officer Hall referred to a possible plan by the defendant and Creel to kill a man who saw Creel with the victim shortly before the murder. The court weighed the prejudicial effect of this information and considered whether a mistrial was mandated.
La.C.Cr.P. art. 770 provides, in pertinent part:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
* * * * * *
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
* * * * * *
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
However, normally a police officer is not a court official within the meaning of La. C.Cr.P. art. 770. State v. Ellison, 572 So.2d 262 (La.App. 1st Cir.1990), writ denied, 575 So.2d 388 (La.1991). The applicable provision is La.C.Cr.P. art. 771 which, in pertinent part, states as follows:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
* * * * * *
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
The jurisprudence interpreting La. C.Cr.P. art. 771(2) has held that unsolicited and unresponsive testimony is not chargeable against the State and may not provide a ground for mandatory reversal of a conviction. State v. Ellison, 572 So.2d at 266; State v. Jack, 554 So.2d 1292 (La.App. 1st Cir.1989), writ denied, 560 So.2d 20 (La. 1990). Further, the Supreme Court has stated that:
[A] police officer's unsolicited, unresponsive reference to another crime by the defendant is not the comment of a court official under Article 770. Absent a showing of a pattern of unresponsive answers or improper intent by the police officer or prosecutor such comments would not fall within the purview of Article 770.
State v. Harris, 383 So.2d 1, 9 (La.1980). Generally, a prosecutor should not be held responsible for answers that he did not seek or expect. See, State v. Jack, 554 So.2d at 1296.
Furthermore, it is questionable whether this statement involved a crime. A mere statement of an intent to commit a crime does not become a criminal attempt or a conspiracy unless it is accompanied by some overt act. La.R.S. 14:26 and 14:27. Criminal conspiracy or attempt requires that, in addition to the agreement to commit a crime, one or more of the parties must do something in furtherance of that agreement. There is no evidence of an overt act in the record before us. See La.R.S. 14:26(A).
*832 A review of the record shows no abuse of discretion in the trial court's denial of the defendant's motion for a mistrial. The trial court's admonition to the jury was sufficient under La.C.Cr.P. art. 771.
This assignment of error is without merit.

IMPROPER ADMISSION OF EVIDENCE

(Assignment of error number 2)
The defendant contends the trial court improperly admitted evidence of certain checks, company benefits, and insurance proceeds. He also claims the evidence was not relevant, some of the evidence was hearsay, and some items lacked proper authentication. The State claims that the defendant was involved in this crime because he was to be paid money.[1] To establish this theory, the State referred to a check written by Mrs. Bracey to Kevin Creel, co-defendants for this murder. The State also presented documents showing company benefits and insurance proceeds received by Mrs. Bracey. Lastly, Officer Hall testified that he had "seen a document totaling over seventy-five thousand dollars received by Laura Mae Bracey."

Relevance
"Relevant evidence is evidence which tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." La.C.E. art. 401. All relevant evidence is admissible except as otherwise provided by positive law. La.C.E. art. 402. Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or waste of time. La.C.E. art. 403.
In his videotaped confession the defendant referred to Mrs. Bracey's payment of Creel's debt on his trailer. He also referred to insurance and company benefits that Mrs. Bracey would receive after the victim's death. The checks and Officer Hall's testimony corroborated the defendant's confession and supported the State's theory that the defendant participated in murder-for-hire. This evidence is relevant.
Evidence may be relevant because it has probative value, but other counterbalancing factors may warrant exclusion. Among these factors are the danger that the evidence may unduly arouse the jury's emotions of prejudice; the probability that the evidence may create a collateral issue which will unduly distract the jury from the main issue; delay in the trial; or the danger of unfair surprise. State v. Franklin, 353 So.2d 1315 (La.1977). It does not appear that the evidence about the checks and insurance benefits would either confuse the jury or unduly prejudice the defendant. The evidence did not result in delay of the trial or unfair surprise. The jury was fully aware that the defendant had not received payment of any money for his participation in the murder. The probative value of this evidence outweighed any prejudicial effect; the trial court did not err in so finding.

Hearsay
The defendant claims that the $230 check from Mrs. Bracey to Creel and Officer Hall's testimony concerning payment of $75,000.00 in benefits to Mrs. Bracey constitute inadmissible hearsay.[2]
The State's theory of the case was that the defendant participated in a murder-for-hire. *833 See La.R.S. 14:30(A)(4). As an element of the offense the State had to prove that Creel had been offered, given or received anything of value by Mrs. Bracey to murder the victim and that Creel would pay the defendant from what he received. The State was not required to prove that the defendant received any money, only that he was offered money to participate in the murder.
The check at issue purportedly was part of the payment to Creel and, thus, was within the res gestae of the offense. Compare State v. Harrison, 505 So.2d 783, 789 (La.App. 2nd Cir.), writs denied, 512 So.2d 433, 434 (La.1987). Res gestae is defined as "events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events, and which are necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction." La.C.E. art. 801(D)(4). In the instant case the payment of the check represents an element of murder-for-hire and was a necessary incident of the criminal act. What forms any part of the res gestae is always admissible into evidence. See State v. Craddock, 435 So.2d 1110 (La. App. 1st Cir.1983). Moreover, while the check does not fall squarely within the business records exception to the hearsay rule because, technically it was not shown that the maker of the check (Mrs. Bracey) was unavailable to testify (La.C.E. art. 804(B)(5), we find that the state otherwise laid a proper foundation for admission of the check into evidence; the possibility of admission of unreliable evidence was thus further reduced.
A bank official testified that the record of the check was compiled in the ordinary course of business, the bank kept copies of customer checks on microfilm, and the photocopies that are made from these records are reproductions of the actual record. Officer Hall also testified that the check was part of the bank records that were subpoenaed. Under La.R.S. 10:3-307(1)(b), Mrs. Bracey's signature on the check is presumed to be genuine or authorized except where the action is to enforce the obligation of a purported signer who has died or become incompetent before proof is required.

Testimony of Officer Hall
The defendant's confession caused Hall to investigate the bank records. The defendant had stated that Mrs. Bracey intended to pay Creel out of the money she received in death benefits. Hall then testified that he had seen a document purporting to pay Mrs. Bracey over $75,000.00.
The testimony was not hearsay because the officer testified only about a document he had seen. This document was not offered or introduced into evidence. The trial court allowed Hall's testimony for its assertive value, that such a document existed, not as proof to the truth of the amount of death benefits Mrs. Bracey actually received. This testimony was not hearsay because Hall's statement was not offered to prove the truth of the contents of the document. See, La.C.E. art. 801(C). However, even if this testimony was offered to prove the truth of the assertion that Mrs. Bracey received death benefits, any error was harmless in view of the other evidence.[3] The manager of employee benefits from the company where the victim worked testified that Mrs. Bracey was paid over $27,500.00 in benefits, an amount well in excess of the $2,000.00 promised to the defendant. See La.C.Cr.P. art. 921.
*834 We find that the trial court correctly admitted these items and testimony into evidence.
This assignment of error is without merit.

IMPROPER ARGUMENT

(Assignment of error number 3)
The defendant claims that the trial court erred by allowing the State to improperly argue, in its closing argument, about the subpoena and bank records that were not introduced into evidence. The defendant contends that the issuance of a subpoena alone does not make any document received automatically admissible. Officer Hall testified that a subpoena was issued for the bank records of Marshall and/or Laura Mae Bracey in April 1990. He stated that Mrs. Bracey's check to Kevin Creel was among the records turned over by the bank. A bank official testified that the record of the check was compiled in the ordinary course of business.
The check was properly introduced into evidence. As a part of the bank records, reference to the records rather the check is a matter of semantics because, in this case, the check was the only bank record in evidence. Therefore, discussion of the bank records was proper in the State's closing argument. See La.C.Cr.P. art. 774. Reference in the closing argument to the subpoena itself, an item not introduced as an exhibit, was harmless, if error at all.
The trial court correctly overruled the defendant's objection.
This assignment of error is without merit.

PATENT ERROR
Under the authority of La.C.Cr.P. art. 920(2), this Court routinely reviews appellate records for patent error. After reviewing the record, we have discovered a patent sentencing error. Neither the minutes nor the sentencing transcript show that the trial court, in imposing the sentences, gave the defendant credit for time spent in actual custody prior to sentencing. Such an allowance of credit is mandatory. La.C.Cr.P. art. 880. Patent sentencing error occurs when the trial court fails to give credit for time served. State v. Hall, 287 So.2d 798 (La.1973); State v. Greer, 572 So.2d 1166 (La.App. 1st Cir.1990). Accordingly, we find patent sentencing error and amend the sentence to reflect that defendant is to be given credit for time served prior to the execution of his sentence. La. C.Cr.P. art. 882(A). Resentencing is not required; however, we remand this case and order the district court to amend the commitment and minute entry of the sentence to give the defendant credit for time served.

DECREE
For the foregoing reasons, the conviction is affirmed and the sentence is affirmed as amended. This case is remanded to the trial court for amendment of the commitment and minute entry to give the defendant credit for time served.
CONVICTION AFFIRMED; SENTENCE AMENDED AND AFFIRMED; REMANDED WITH INSTRUCTIONS.
NOTES
[1] This statement is in the defendant's videotaped confession. The defendant subsequently specifically denied the truth of the statements on the videotape. He claimed that Detective Hathorne induced him to make the statements in exchange for being allowed out of jail to meet his girl friend at a McDonald's and the promise that all theft charges against him would be dropped.
[2] In his brief to this Court, the defendant complains that no handwriting analysis was performed to show that Mrs. Bracey actually executed the check. However, this objection was not raised at trial. A defendant is limited on appeal to grounds articulated at trial. A new basis for objection cannot be raised for the first time on appeal. State v. Brown, 481 So.2d 679 (La.App. 1st Cir.1985), writ denied, 486 So.2d 747 (La.1986).
[3] The Louisiana Supreme Court in State v. Cage, 583 So.2d 1125, 1127-1128 (La.1991), stated the following regarding harmless error:

A trial error is harmless when a reviewing court is convinced that the error was harmless beyond a reasonable doubt. ... The state has the burden of demonstrating that the trial error did not contribute to defendant's conviction. If a reviewing court finds that the trial record establishes guilt beyond a reasonable doubt, the interests of justice have been satisfied and the judgment should be affirmed. (Citations omitted)