liWOODARD, Judge.
The seven defendants, Derrick D. Alston, Phaedrus Collins, Fredrick D. Gaines, Oren-thal J. Gill, Jr., Ory Guidry, Jr., Brian Henderson and Patrick D. Jones, were charged by bill of indictment with armed robbery, a violation of La.R.S. 14:64. The defendants all pled guilty on September 13, 1993. On November 9, 1993, each defendant was sentenced to twenty-five years at hard labor without benefit of parole, probation or suspension of sentence. Each defendant now appeals his sentence. Additionally, Gaines appeals on other issues.

FACTS

On June 4, 1993, Phaedrus Collins, Fredrick D. Gaines, Orenthal James Gill, Jr., Ory Guidry, Jr., Brian E. Henderson, and Patrick D. Jones were all at the home of Derrick D. Alston in Alexandria, Louisiana. While they were all talking, it was felt that Alston and Gaines needed some car parts and accessories. The conversation then turned to carjacking, and plans were made.
l2At approximately 10:30 p.m., they all left Alston’s home and eventually ended up in Marksville, Louisiana, at the A & W Lounge. They “seop[ed]” the area for girls and a car to “jack.” They choose a grey Buick and followed as its driver left the parking lot. Alston, Collins, Gill and Jones followed in Alston’s Cadillac. Gaines, Guidry and Henderson followed in Henderson’s Buick.
The grey Buick was being driven by Glenn Thomas, who had two passengers, Floyd Coleman and another passenger not identified in the record. The defendants followed the grey Buick for some time, and continued to follow it as it turned onto a side road near a cemetery. Alston passed the grey Buick and stopped, blocking in the victims. The victims attempted to leave, but several of the defendants had exited their cars to stop them. Gaines and Guidry had baseball bats. Henderson, Alston, and Gill each had a handgun.
The seven defendants, wearing ski masks, bandannas and gloves, ordered the three victims from their ear, demanded their money, ordered them to strip naked, and ordered Thomas into the trunk of the Cadillac. They attempted to place Coleman in the trunk of another car, but there was not sufficient room. At this point, the defendants ordered Coleman and the third victim to run into the woods. Collins jumped into the grey Buick and drove it away following the other two vehicles. The group traveled approximately fifteen miles from Marksville and released Thomas. They tried to strip the grey Buick, turned on its ignition, and let it run down the road without a driver into a ditch.

Gaines’ Assignment of Error No. 1

Gaines alleges that the trial court erred in refusing to allow him to enter a “Crosby” plea. He argues that the court’s ruling, “(if) the State doesn’t agree to it, the court doesn’t have the right to take it,” has no basis in this state’s law.
He was charged, along with the six other eodefendants, with armed robbery and second degree kidnapping. He subsequently filed two motions to suppress evidence which were both denied by the trial court. Thereafter, he joined the other codefendants and changed his not guilty plea to guilty.
When the trial judge began his Boyk-inization of Gaines, his counsel informed the court that Gaines was entering a “Crosby” plea, reserving his right to seek appellate review of the trial court’s rulings on the two motions to suppress. The district attorney objected to any form of 13a “Crosby” plea, and the trial judge informed Gaines that it could not accept a “Crosby” plea without the state’s agreement. Counsel for Gaines objected to the trial court’s ruling but did not request a stay of the proceedings in order to seek a writ of review from the court of *1330 appeal. Instead, Gaines was Boykinized and entered an unqualified plea of guilty to the charge of armed robbery and thus, waived any objections to the pre-plea rulings. State v. Crosby, 338 So.2d 584 (La.1976). Accordingly, we find no manifest error in the trial court’s ruling.

Gaines’ Assignment of Error No. 2

Gaines alleges that the trial court erred in denying his Motion to Suppress evidence, in which he sought to suppress a written statement he gave after his arrest while he was in custody. Notwithstanding, when he entered his unconditional guilty plea, he waived any pre-plea non-jurisdictional errors. Crosby, supra. Therefore, this issue is moot.

SENTENCING ERRORS

All seven defendants were sentenced to twenty-five years at hard labor without benefit of parole, probation or suspension of sentence. All now allege that the trial court erred in departing from the sentencing guidelines and in imposing sentences that are excessive.
In a recent Louisiana Supreme Court decision, State v. Smith, 639 So.2d 237 (La.1994), the court held:
(1) while a trial judge must consider the Guidelines, he has complete discretion to reject the Guidelines and impose any sentence which is not constitutionally excessive, but is within the statutory sentencing range for the crime of which a defendant has been convicted, so long as he states for the record the considerations taken into account and the factual basis for his imposition of that sentence, La.Code Cr.P. art. 894.1; and (2) where the trial judge has considered the Guidelines and imposed a sentence, adequately stating for the record the considerations taken into account and the factual basis for imposition of that sentence, an appellate court is limited to a review of the sentence imposed for constitutional excessiveness, without regard as to whether the trial judge either employed or deviated from the Guidelines.
The defendants’ sentences were all within the statutory range of not less than five years and not more than ninety-nine years at hard labor without benefit of parole, probation or suspension of sentence. La. R.S. 14:64(B). The trial judge considered the sentencing guidelines in each case, Ustating the considerations he took into account, as well as a factual basis. Thus, we are limited to a traditional review of the sentences for constitutional excessiveness.
Article 1 § 20 of the Louisiana Constitution of 1974 prohibits “cruel, excessive, or unusual punishment.” Therefore, a sentence which falls within the statutory limits may nevertheless be excessive. State v. Sepulvado, 367 So.2d 762 (La.1979); State v. Naquin, 527 So.2d 601 (La.App. 3d Cir.1988). To constitute an excessive sentence this court must find that the penalty is so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and, therefore, is nothing more than needless imposition of pain and suffering. State v. Campbell, 404 So.2d 1205 (La.1981); State v. Everett, 530 So.2d 615 (La.App. 3d Cir.1988), writ denied, 536 So.2d 1233 (La.1989). The trial judge is given wide discretion in imposing a sentence, and a sentence imposed within statutory limits will not be deemed excessive in the absence of manifest abuse of discretion. State v. Howard, 414 So.2d 1210, 1217 (La.1982).
For each defendant, the trial judge considered the sentencing guideline reports, letters on behalf of the defendants and letters, from the victims. He noted mitigating factors of cooperation with law enforcement, expressions of remorse by all defendants and the age of the defendants. Aggravating factors, which the trial judge considered to be most important included premeditation, traveling approximately thirty miles to commit it, the kidnapping of Thomas at gunpoint. He also found the following aggravating factors to be of lessor importance: the deliberate cruelty to Thomas by requiring him to strip naked, locking him in the trunk of a car and driving away with him; as well as placing the victims in a vulnerable position by out numbering them and being armed; and creating a risk of great bodily harm to more than one person.
*1331 After a thorough review of the record and the reasons for sentencing given by the trial judge, we conclude that the defendants’ sentences are not excessive.

ERRORS PATENT

A review of the record reveals an error patent. La.Code Crim.P. art. 880 provides that when imposing sentence the court shall give the defendant credit toward service of his sentence for time spent in actual custody prior to the imposition of sentence. The transcript indicates the trial court did give each defendant credit for time served. However, the minutes of sentencing are ineom-plete ^and do not show that any of the defendant’s were given credit for time served. We remand this case and order the district court to amend the minute entries of the sentences to reflect that the defendants are given credit for time served. See La. Code Crim.P. art. 882(A); State v. Jones, 607 So.2d 828 (La.App. 1st Cir.1992), writ denied, 612 So.2d 79 (La.1993).

CONCLUSION

For the foregoing reasons, the defendants’ sentences for armed robbery are affirmed, and the trial court is ordered to amend the minute entries of the sentences to reflect that the defendants are given credit for time served.
SENTENCES AFFIRMED, AS AMENDED; REMANDED WITH ORDER.