JiDECUIR, Judge.
Defendant, Rodney Darjean, was charged by bill of indictment with first degree murder, a violation of La.R.S. 14:30. Defendant’s bill of indictment was amended on March 7, 1994, charging the defendant with second degree murder, a violation of La.R.S. 14:30.1. The defendant withdrew a previous plea of not guilty and not guilty by reason of insanity and entered a plea of not guilty. Trial by jury began on March 15, 1994. On March 17, 1994, the jury returned a verdict of guilty as charged. On March 25,1994, the defendant was sentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. Defendant now appeals his conviction before this court, alleging four assignments of error.

FACTS

On or about April 12, 1992, the defendant allegedly beat or murdered his wife, Maudry, at their home located in St. Landry Parish. The victim’s body was found in the back seat of her automobile. Both the victim and the vehicle had been set on fire. The victim was identified by her dental records. The coroner was unable to determine if the victim died before the fire or as a result of the fire. The defendant was subsequently arrested.

ERRORS PATENT AND ASSIGNMENT OF ERROR NO. 4

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. La.Code Crim.P. art. 880 provides that when imposing sentence the court shall give the defendant credit toward service of his sentence for time spent in actual custody prior |2to the imposition of sentence. The record indicates the trial court did not do so. Thus, the commitment and minute entry should be amended to reflect that the defendant is given credit for time served prior to the execution of the sentence. See La.Code Crim.P. art. 882(A). Resentencing is not required. This case is *814 remanded and the district court is ordered to amend the commitment and minute entry of the sentence to reflect that the defendant is given credit for time served. State v. Jones, 607 So.2d 828 (La.App. 1st Cir.1992), writ denied, 612 So.2d 79 (La.1993).

ASSIGNMENTS OF ERROR NOS. 1-3

These assignments of error are interrelated. By these assignments of error, the defendant contends the trial court erred in refusing to allow him to admit certain responses he made to a treating physician as said responses are statements against interest under La.Code Evid. art. 804(B)(3). Furthermore, even if said statements are deemed inadmissible under La.Code Evid. art. 804(B)(3), the application of La.Code Evid. art. 804(B)(3) should not deny the defendant his constitutional right to due process of law by prohibiting him from presenting and questioning a material witness. Defendant also contends that if said statements are determined to be hearsay statements that do not fall within the hearsay exception, La.Code Evid. art. 804(B)(3), said statements nevertheless should be admitted as they meet Confrontation Clause reliability standards.
Defendant was arrested for the murder of his wife on April 12, 1992. A few days later, the defendant allegedly suffered an epileptic seizure and was transported from St. Landry Parish Prison to the Veterans Administration Hospital in Alexandria. Immediately after coming out of the seizure, the defendant was asked by the treating physician, “Why are you here?”. The defendant replied “I killed my wife.” The physician asked the defendant what happened. The defendant responded, “She attacked me with a butcher knife ...”
A hearing was held in accordance with La.R.S. 15:451, which provides:
Before what purposes[1] to be a confession can be introduced in evidence, it must be affirmatively shown that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises.
|gSt. Landry Parish Sheriffs Deputy Phil Goins testified at the hearing that he and Deputy James White transported the defendant from St. Landry Parish Prison to the Veterans Administration Hospital in Alexandria. Neither deputy questioned the defendant during the ride. Upon arriving at the hospital, the defendant was unresponsive. The defendant was taken by stretcher into the hospital, and examined by a doctor. After the defendant was given smelling salts, he responded. The following colloquy occurred at the hearing during the questioning of Deputy Goins:
Q. Did the doctor and Mr. Darjean have any conversation in your presence?
A. Yes, sir.
Q. What did they — what was the conversation?
A. After Rodney came to where he could really talk to him, he asked him what was the problem. He said, “I don’t know.” So he asked him again. He said, “Well, why are you here?” He said, “I killed my wife.”
[[Image here]]
Q. Did he discuss in any detail with the doctor how his wife had been killed?
A. The doctor questioned him and he asked him what happened. He said his wife came at him with a butcher knife. And he used a pillow to protect himself and that’s when the struggle got on.
Deputy James White also testified at the hearing as follows:
Q. What happened next?
A. He woke up and the doctor asked him who he was and why was he here. And the individual said, “Well, I’m here because I killed my wife.”
Q. Alright. Was there anymore discussion along that line?
A. The doctor asked him, ‘Well, how did you kill your wife?” And the individual went on to state that he put her in a car *815 but he didn’t say exactly how he did it after that point. He said there was a fight or somewhat — I’m trying to remember exactly what he said. But he said there was a fight. His wife tried to stab him. He blocked her with a pillow. And he stated that he put her in a car. He killed his wife.
Q. Did he give any details about how he had done it?
A. No, sir.
The trial judge ruled at the hearing on March 2, 1994, that the statements made by the defendant were free and voluntary. The court further stated that he would determine the admissibility of the statements when the statements are offered at trial. The defendant filed a Motion In Limine on March 16, 1994, in order to admit the statements in question at trial. The defendant stated he would be unavailable to testify at trial because of his privilege not to testify as an accused. The trial court filed a Per Curiam in response. The court treated the statements made by the defendant ^separately. The court held the statement “I killed my wife” admissible against the defendant if offered by the state against the defendant. See La.Code Evid. art. 801(D)(2)(a). The court stated that the defendant may offer the statement, but it is subject to hearsay objection. The court held the statement “She attacked me with a butcher knife” tends to exculpate the defendant, “thus mitigating the trustworthiness of the statement.” The court noted that La.Code Evid. art. 804(B)(3) provides that under the “statement against interest” exception, a statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement. As the statement cannot be corroborated by other statements made by the defendant, the court held the statement would not be admitted as an exception to the hearsay rule.
As the court stated that it would allow the statement “I killed my wife” to be admitted at trial, we address only whether the court was correct in ruling that the statement “She attacked me with a butcher knife” should not be admitted as an exception to the hearsay rule. We conclude the trial judge was correct in holding that the statement by the defendant was a self-serving declaration and does not constitute an exception to the hearsay rule. See State v. Thomas, 604 So.2d 52 (La.App. 5th Cir.1992). Furthermore, defendant’s contention that said statement should be admitted according to the dictates of Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) is without merit. In Chambers, the United States Supreme Court held that a declaration against penal interest could be allowed pursuant to a defendant’s fundamental constitutional right to present witnesses in his own defense if the surrounding circumstances provide a considerable assurance of the reliability of the statement. In the present case, the statement at issue is not a statement against penal interest as it tends to exculpate the defendant utilizing a theory of self-defense. Therefore, the reasoning utilized in Chambers does not apply.
Additionally, defendant’s assertion that the statement is reliable is unsupported by the record. No evidence was submitted to show that the defendant was coming out of a “grand mal seizure” when he gave the statement, thus showing that he was not physically or mentally capable of fabricating a self-defense theory. Blood was found throughout the Darjean house. Other than a small cut on his finger, the defendant had no injuries. Detective Vernon Marks testified than he interviewed the defendant immediately after the murder, and the defendant did not indicate to him that he and his wife had any kind of disagreement or struggle before his wife allegedly left the residence and was later |sfound dead. The defendant stated to Detective Marks that his wife received a phone call late at night, retrieved a gun from their closet, and left the house. No gun was found in Mrs. Darjean’s vehicle. Charles Fontenot, a friend of the defendant, testified that the defendant talked about collecting on a “big” insurance policy on his wife. Wilton Hunt, Jr., godfather to one of the Darjean children, testified that the defendant once told him that he would kill his wife and burn her in a ear. Twelve year old Mauney Dar- *816 jean, the defendant’s daughter, testified she heard her mother yelling for help on the night her mother was murdered.
The statement “she attacked me with a butcher knife” would be consistent with a theory of self-defense. However, the defendant did not present any evidence to support a self-defense theory at trial. To allow the defendant to claim to be “unavailable” by invoking the Fifth Amendment and then allow introduction by defendant of such a self-serving statement would circumvent the intent of the hearsay rules and permit the defendant to “testify” without being cross-examined by the state. Even if we were to find error on the part of the trial judge, any error in failing to allow the statement in question is harmless as the defendant failed to raise a self-defense theory and the facts presented at trial do not support a theory of self-defense.
For the foregoing reasons, defendant’s assignments of error lack merit.
The defendant’s conviction and sentence are affirmed. The district court is ordered to amend the commitment and minute entry to reflect that the defendant is given credit for time served.
AFFIRMED AND REMANDED WITH INSTRUCTIONS.

. Should be "purports”. The Supreme Court, in quoting the section, has, at least twice, inserted "[purports]” following "purposes”. See State v. Joseph, 1950, 217 La. 175, 46 So.2d 118; State v. Lanthier, 1943, 201 La. 844, 10 So.2d 638.